US DISTRICT COURT INDEX SHEET

















SWD

3:05-CV-2020 PURE BIOSCIENCE V. FALKEN INDUSTRIES

*1*

*PCSO*



1  CHARLES E. BRUMFIELD, ESQ. [SBN # 56636]
   c/o PURE BIOSCIENCE
2  1725 Gillespie Way
   El Cajon, California 92020
3  Phone: 619-596-8600 ext. 138
   Fax: 619-596-8790
4
   Attorney for Petitioner
5



FILED

OCT 25 2005

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

6

7                **UNITED STATES DISTRICT COURT**

8              **SOUTHERN DISTRICT OF CALIFORNIA**

9

10 |                                    | Case No.
11 | PURE BIOSCIENCE
   | fka Innovative Medical              | **'05 CV 2020  JAH (AJB)**
   | Services,
12 | a California corporation             | PETITION FOR ENTRY OF JUDGMENT ON
   |                                     | ARBITRAL AWARD
13 |
14 |                    Petitioner,
15 | vs.
16 | Falken Industries, Ltd.,
   | a New Jersey corporation
17 |
18 |
   |                    Respondent.
19 |
20

21      1.    PURE hereby moves this Court to enter judgment on the Award

22 of Arbitrator Fitzmaurice entered in San Diego, California in AAA Case

23 Number 50 T 133 00021 05, a true and correct copy of which Award is

24 appended hereto as Exhibit "1."

25      2.    This Court has diversity jurisdiction under 28 U.S.C.

26 Section 1332, as the parties are citizens of different states and the

27 amount in controversy exceeds $75,000, exclusive of interest and costs.

28

                        ORIGINAL                    PURE BIOSCIENCE'S
                                                    PETITION FOR ENTRY OF JUDGMENT
                                                    ON ARBITRAL AWARD
                                                    PAGE 1



3.    Venue is proper in this district under 28 U.S.C., Section 1391, or otherwise.

4.    On 27 October 2003, PURE filed its AAA Statement of Claims against NVID International, a Delaware corporation ("NVID"), Falken Industries Ltd. a New Jersey corporation ("FALKEN"), and Steven Gordon, an individual.

5.    The arbitration concerned breaches of that certain Core Settlement Agreement dated 15 November 2001, which agreement contained dispute resolution provisions naming Jack Fitzmaurice, Esq. as Arbitrator.  A true and correct copy of the Core Settlement Agreement is appended hereto as Exhibit "2."    [Please see Section 4.8 at p. 9 and Section 18.1 at p. 22].

6.    Respondent Gordon was subsequently dismissed from the arbitration.  FALKEN declined to voluntarily participate and ultimately was bifurcated from NVID.  PURE's claim against NVID proceeded separately to hearing in October 2004.

7.    On June 9, 2004 PURE filed a motion to compel Falken to arbitration in the United States District Court Southern District of California (case# 04CV1147).  This motion was ultimately heard before Hon. M. James Lorenz.  On January 4, 2005, Judge Lorenz issued an order compelling Falken to Arbitration.  Arbitrator Fitzmaurice assigned a new AAA Case# 50 133 T 00021 05 as to bifurcated Falken.

8.    The arbitral hearing against Falken commenced before Arbitrator Jack F. Fitzmaurice on August 8, 2005 and continued for nine days at the offices of AAA in San Diego, located at 600 B Street, San Diego California.

9.   The Award in favor of PURE was entered on October 12, 2005. The petition is timely in that it is made "within one year after the award is made." [9 U.S.C., Section 13.]

10.   Unless grounds are shown for modification or correction, the Court must enter judgment on the award as if rendered in an action. [9 U.S.C., Section 13.]

11.   An application to enter judgment (i.e., confirm an award) may be made to the district court "for the district within which the award is made." [9 U.S.C., Sections 9, 10, 11.]

Respectfully submitted,

Dated:  October 25 , 2005

CHARLES E. BRUMFIELD,
Counsel for PURE

# ORIGINAL

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitration Tribunal

In the Matter of the Arbitration between:

Re: 50 133 T 00021 05
   Pure Bioscience aka Innovative Medical Services
   vs
   Falken Industries, Ltd.

## AWARD OF ARBITRATOR

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated November 15, 2001, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby, AWARD, as follows:

1. Within thirty (30) days from the date of transmittal of this Award to the Parties, Falken Industries, Ltd., hereinafter referred to as "Falken," shall pay to Pure Bioscience, hereinafter referred to as "Pure," the sum of $3,440,250.00 as and for damages and the sum of $194,429.35 for Attorneys' fees and costs (in addition to the AAA and Arbitrators' fees as set forth in Paragraph 2) for a total Award of $3,681,429.80.

2. The administrative fees and expenses of the American Arbitration Association totaling $20,100.00 shall be borne entirely by Falken and the compensation and expenses of the Arbitrator totaling $26,650.58 shall be borne entirely by Falken.

3. This Award is a final Award in full settlement of all Claims submitted to this Arbitration.

4. I hereby certify that, for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in San Diego, California, USA.

_____
Date

_____
Jack F. Fitzmaurice, Esq.

State of California
                        } SS:
County of San Diego

NICOLE RENCH
COMM. #1529955
Notary Public-California
SAN DIEGO COUNTY
My Comm. Exp. Oct 21, 2008

Subscribed and sworn before me on October 12, 2005 by _Nicole Rench_, Notary Public.

10-12-05
_____
Date

_____
Nicole Rench



**International Centre
for Dispute Resolution**

Thomas Ventrone
Vice President

Steve Kim
Assistant Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

October 14, 2005

**VIA ELECTRONIC MAIL & FEDERAL EXPRESS ONLY**

Wolfgang F. Hahn, Esq.
Wolfgang F. Hahn & Associates
7160 Caminito Pepino
La Jolla, CA 92037

Charles E. Brumfield, III, Esq.
Pure Bioscience
1725 Gillespie Way
El Cajon, CA 92020

Michael J. Rovell, Esq.
Lisa Fair, Esq.
Law Offices of Michael J. Rovell
20 North Clark Street, Suite 2450
Chicago, IL 60602

Re: 50 133 T 00021 05
    Pure Bioscience aka Innovative Medical Services
    vs
    Falken Industries, Ltd.

Dear Counsel:

This will serve to inform the Parties by direction of Arbitrator Fitzmaurice we herewith transmit to you the duly executed Final Award in the above matter.

At this time we have verified with the Neutral that he has submitted all requests for compensation and expenses in this matter. Accordingly, we have conducted a final reconciliation of the finances and are providing each party with a Financial History and Compensation Summary.

Note that the financial reconciliation reflects costs as they were incurred during the course of the proceeding. Any apportionment of these costs by the arbitrator, per Rule R-43 of the Commercial Arbitration Rules, are addressed in the Final Award and will be stated as one party's obligation to reimburse the other party for costs incurred.

Thank you for using the services of the International Centre for Dispute Resolution, a worldwide leader in dispute resolution.

Sincerely,

Bradley D. Soto
International Case Manager
212 484 3279
SotoB@adr.org

Cc: Jack F. Fitzmaurice, Esq. (via electronic mail only & without enclosures)

Encl.
*A Division of the American Arbitration Association*

# ORIGINAL

## CORE SETTLEMENT AGREEMENT

This Core Settlement Agreement (or "Agreement") is effective as of November 15, 2001 (the "Effective Date"), by and among Innovative Medical Services, Inc. a California corporation ("IMS"), ETIH20 Corporation, a Nevada corporation ("ETI"), NVID International, Inc., a Delaware corporation ("NVID"), Watertronics Ltd., an entity organized under the laws of the United Kingdom ("Watertronics"), Aqua Bio Technologies, S. A. de C.V., a Mexican corporation ("Aquabiotech Mexico"), Andrew B. Arata, ("Arata") individually, Sistecam S.A., a Costa Rican corporation ("Sistecam"), David Larson, the President of NVID, individually ("Larson"), Aqua Bio Technologies Inc., a Delaware Corporation, ("Aquabiotech") , Michael Redden, the Secretary and Treasurer of NVID, individually ("Redden"), Steve Gordon, individually ("Gordon"), George L. Duren ("Duren") and Dr. Charles Lewis ("Lewis") (the foregoing parties, individually a "Party" and collectively, the "Parties") with regard to the following:

A.     Axenohl and its diluted form, "Axen" (hereinafter "Axenohl"), is a silver ion product with marketable disinfectant properties, invented by Arata. Arata assigned the rights to Axenohl to NVID and it is the subject of U.S. Patent No. 6,197,814; WIPO App. No. WO 99 / 18790, together with all trade secrets as defined in California Civil Code section 3426.1 and the case law interpreting such section, unpatented inventions, all patents pending, filed, or granted in the United States and in all other countries, know-how and other rights, related to Axenohl and all rights and incidents of ownership of NVID related thereto, including, but not limited to the issued and/or applied for patents listed on Attachment "A" to Exhibit "A," hereto (the "Patent").

B.     NVID has entered into various marketing and/or manufacturing agreements related to Axenohl with IMS and ETI that have become the subject of dispute (the "Dispute").

C.     As part of the Dispute, NVID claims that Watertronics and Aquabiotech Mexico have certain license and/or manufacturing rights regarding Axenohl, which are contested by IMS and ETI.

D.     NVID has caused to be filed a state court action in Florida against IMS and ETI seeking declaratory and other relief regarding the Dispute (Sixth Judicial Circuit in and for Pinellas County, Case No. 01-2867-CI-21) ("Florida Action").

E.     IMS and ETI have caused the Florida Action to be removed to the United States District Court for the Middle District of Florida (Tampa Division), Case No. 8:01-cv-950-T-23MSS, and have applied to that federal court for an order "staying" said action, or alternatively dismissing or transferring pursuant to asserted dispute resolution agreement(s) of the Parties.

F.     IMS and ETI have filed a claim regarding the Dispute before the American Arbitration Association in San Diego County, California, and when NVID declined to voluntarily participate in such arbitration, filed a "Petition for an Order Compelling Arbitration" before Chief Judge Marilyn L. Huff in the United States District Court for the Southern District of California (Case No. 01-CV-778H (JAH)), which requested order to compel has been granted.



G.     IMS, ETI and NVID have stipulated to Jack F. Fitzmaurice, *and his successors*, as a neutral arbitrator (the "<u>Arbitrator</u>") in the now pending American Arbitration Association arbitration in San Diego, civil matter no. 73 1990018601 LJP (the "<u>San Diego Arbitration</u>").

H.     The Parties hereto have reached a global resolution of the Dispute, and wish such agreement to be memorialized pursuant to this Agreement, as a final and binding arbitration award subject to the continuing jurisdiction and administration of the Arbitrator, and thereafter if necessary, and without the further consent of the Parties, to be confirmed as a non-contestable and non-appealable stipulated judgment by the United States District Court for the Southern District of California, or of the Superior Court of the State of California in and for the County of San Diego.

I.     As a core consideration of the global resolution, NVID is to transfer all Axenohl patent rights to IMS. IMS, upon receipt of such rights intends to use its best efforts to promote and market Axenohl worldwide.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## ARTICLE 1
## ESCROW AND CLOSING

The transactions contemplated by this Agreement shall be closed as set forth in this Article 1.

1.1     <u>Deposit of Documents; Review Period</u>.  Within five (5) days after the Effective Date, the Parties shall deposit all ancillary agreements, opinions and other documents (the "<u>Transaction Documents</u>") with the Arbitrator and provide copies of each to all other Parties to this transaction (the "<u>Deposit Date</u>").  The Parties shall have an additional period of five (5) days subsequent to the Deposit Date (the "<u>Review Period</u>"), to review the Transaction Documents.  In the event a Party asserts that the Transaction Documents are materially deficient, or do not conform with the requirements of this Agreement, the Party discovering such deficiency (the "<u>Objecting Party</u>") shall give written notice to all Parties including the effected Party (the "Responding <u>Party</u>") not later than the end of the Review Period.  The Responding Party shall have five (5) days subsequent to the date the notice is received to cure such deficiency.  In the event the Responding Party is unable or unwilling to cure the deficiency, the Objecting Party may elect to terminate this Agreement and hold the Responding Party or Parties responsible for damages under the terms of this Agreement.

1.2     <u>Closing</u>.  The Dispute and related matters will be settled among the Parties and various documents evidencing the Parties' obligations as described herein will be delivered to and filed with certain third parties or agencies on such date as may be agreed upon by the Parties, but no later than November 30, 2001, at the offices of the Arbitrator, or at such other time and location as the Parties may mutually agree (the "<u>Closing</u>").  The date on which the Closing occurs is referred to herein as the "<u>Closing Date</u>."

1.3     <u>Opening of Escrow</u>.  The transfer of the IMS Shares (as defined in section 4.1) and confirmation of the transfer of the Patent shall be effected through an escrow maintained



either with the Arbitrator or at Computer Share Trust Company of Lakewood, Colorado ("Escrow Holder"), which shall be opened at Closing, or soon thereafter as practicable. For purposes of this Agreement, the Escrow shall be deemed opened on the date ("Escrow Opening Date") upon which Escrow Holder shall have received executed counterparts of this Agreement from the Parties and the documents set forth in section 1.2.1 below. Escrow Holder shall notify the Parties, in writing, of the date Escrow is opened. In addition, the Parties each agree to execute, deliver and be bound by any reasonable or customary supplemental escrow instructions of Escrow Holder or other instruments as may reasonably be required by Escrow Holder in order to consummate the transactions contemplated by this Agreement. Any such supplemental instructions shall not conflict with, amend or supersede any portion of this Agreement. If there is any inconsistency between such supplemental instructions and this Agreement, this Agreement shall control.

    1.3.1   Deposits to Escrow.

    (a)   IMS shall deliver certificates for the IMS Shares (as defined in section 4.1), executed by the officers of IMS to the Arbitrator by November 26, 2001.

    (b)   NVID shall execute a notarized Assignment of Patent in the form attached hereto as Exhibit "A," contemporaneously with the execution of this Agreement, and deliver the original to IMS with a copy to the Arbitrator. IMS shall forthwith file for the purpose of recording the Assignment of Patent with the United States Patent and Trademark Office.

    1.4   Release Date. Provided all conditions of this Agreement have been satisfied, including but not limited to the execution by Larson, Redden and Gordon of the Guaranty enumerated in Exhibit "G" hereof, the IMS Shares shall be released to NVID, Arata, Duren, and Lewis on a date that is not more than five (5) business days subsequent to the Closing Date (i.e., the "Release Date").

    1.5   Costs and Expenses. The escrow fee of Escrow Holder and the Escrow Holder's customary charges shall be divided equally, and promptly paid by IMS and NVID. If, as a result of no fault of the Parties, Escrow fails to close, IMS and NVID shall share equally all of Escrow Holder's fees and charges.

    1.6   Closing Deliveries. At the Closing, each of the respective Parties hereto shall execute, acknowledge, and deliver (or shall cause to be executed, acknowledged, and delivered) any agreements, resolutions, or other instruments required by this Agreement to be so delivered at or prior to the Closing, together with such other items as may be reasonably requested by the Parties hereto and their respective legal counsel in order to effectuate or evidence the transactions contemplated hereby.

## ARTICLE 2
## TERMINATION OF CONTRACTS

    2.1   The tripartite agreement entitled "Manufacturing, Licensing and Distribution Agreement" dated March 26, 2001 among IMS, NVID and ETI shall be terminated and have no further force effect as of the Closing Date.

ORIGINAL

2.2     All previous agreements among the Parties (including the NVID-Sistecam contract) related to the manufacturing and distribution of products covered by the Patent, including but not limited to the agreements that NVID claims exist between NVID and Watertronics and NVID and Aquabiotech Mexico regarding the distribution of Axenohl shall be terminated as of the Closing Date.

2.3     All Parties shall bear their own expenses in connection with the termination of the contracts as set forth in this Article. Each of the Parties waives any right to receive any damages or compensation as a result of any contract terminated pursuant to this Article, except as provided for herein. Except as specifically referenced herein to the contrary, all prior payments made by any Party under any contract terminated pursuant to this Article shall remain the rightful property of the receiving party.

## ARTICLE 3
## OBLIGATIONS OF NVID

NVID shall deliver the documents and perform the obligations as set forth in this Article 3 effective as of Closing.

3.1     <u>Transfer of Patent</u>. NVID shall deliver to IMS upon full execution hereunder all right, title and interest in and to the Patent by executing and delivering to IMS the Assignment of Patent.

3.2     <u>Ownership of Trademarks and Regulatory Approval(s)</u>. The Parties agree that the trademarks "Axenohl " and "Axen" are owned by IMS. NVID assigns and transfers to IMS, effective upon full execution hereunder, all of NVID's right, title and interest in and to any other marks used in connection with the Patent, together with the goodwill of the business symbolized by the marks. NVID will cooperate in transferring any and all regulatory approvals to IMS, including but not limited to USDA approval.

3.3     <u>Dismissal of Florida Action</u>. NVID shall file the Dismissal with Prejudice with regard to the Florida Action upon full execution hereunder, in the form attached hereto as <u>Exhibit "B."</u>

3.4     <u>Resolutions of NVID Board</u>. NVID shall deliver to IMS the following resolutions of the NVID board of directors (the "<u>NVID Board</u>"), certified by the Secretary of NVID:

3.4.1     Resolutions approving this Agreement, the transactions contemplated hereby and all of the obligations of NVID set forth herein.

3.4.2     Resolutions authorizing David Larson, President and Michael Redden, Secretary, to execute this Agreement and all documents referred to herein on behalf of NVID.

3.4.3     Resolutions authorizing David Larson, President or Michael Redden, Secretary to take any and all actions, execute any documents or instruments to implement the intent of this Agreement, without further approval of the NVID Board.



3.4.4   Resolutions effective on or before the Closing Date evidencing that the NVID Board is comprised of the following individuals:

| David Larson | Director | Phil Lewis | Director |
| Michael Redden | Director | Robert Edelson | Director |
| Steven Gordon | Director | Keith Duffy | Director |

3.5   <u>Costs of Arbitration</u>. Any amounts charged by AAA from the inception of the claim, and/or arbitration fees of the Arbitrator necessary to obtain the final, binding arbitration award hereunder or to monitor compliance therewith shall be divided equally and paid promptly by IMS and NVID.

3.5.1   Pursuant to payment requirements contained in the asserted Tripartite Agreement of March 26, 2000, IMS has tendered certain checks to NVID, those being checks nos. 6702, 6705, 6837, and 7015 in the aggregate amount of $30,204.62.

3.5.2   IMS has taken the legal position that an acceptance of these checks would be a "retention of benefits" under said disputed contract. Pursuant to advice of counsel, NVID has maintained custody of the referenced presented checks, but has declined to cash them. NVID is desirous of negotiating these checks upon full execution. Concurrently, NVID would like IMS to enter into a stipulated concession that IMS will forgo any such "retention of benefits" legal argument (as to the referenced checks) in the event that the arbitration should for whatever reason continue "on the merits." IMS is willing to forego that legal argument, and the parties agree on this point as follows:

a) Upon full execution, NVID may cash the referenced checks;

b) At Closing (on or about November 30, 2001), IMS will issue to NVID a further $10,000 payment, which may be negotiated by NVID immediately thereafter;

c) In the event that the escrow hereunder fails to close for any reason such that the San Diego AAA arbitration proceeds "on the merits," IMS shall receive a credit in the full amount of the $40,204.62 aggregate check amount, applied to any payments otherwise found to be due from IMS to NVID under the contractual relationship between the parties as determined by the Arbitrator. IMS shall receive an additional agreed upon credit in the amount of $30,000, for a full cumulative credit of $70,204.62.

d) IMS agrees to forego as it relates to these checks only, any legal argument as to "retention of benefits." IMS reserves the right to assert its "retention of benefits" argument as to any other consideration directly or indirectly received by NVID.

3.5   <u>Termination of Existing Axenohl Contracts</u>. NVID to cooperate in terminating all Axenohl contract rights between or among ETI, IMS and NVID, and those contracts between NVID and Aquabiotech Mexico, Sistecam, and Watertronics such that this Core Settlement Agreement shall become the operable contractual relationship among the Parties.

ORIGINAL

3.6    <u>Claims of Lewis, Andrew Arata and George Duren</u>.  NVID authorizes IMS to set-off from the IMS stock or sums due NVID under this Agreement and to pay therefrom the agreed upon claims of Arata, Duren and Lewis against NVID, as follows: to Lewis 14,000 of the 700,000 shares of IMS stock otherwise due NVID pursuant to this Agreement and an amount equal to 1% of any sums due NVID from IMS hereafter; 17,500 shares each to Arata and Duren of the 700,000 shares of IMS stock otherwise due NVID pursuant to this Agreement; and, an amount equal to 2.5% each of the sums due NVID from IMS hereafter to Arata and Duren. NVID shall hold IMS and ETI harmless for any obligation to Lewis, Arata and/or Duren, arising out of revenue related to Axenohl flowing from IMS to NVID. Arata, Duren and Lewis shall hold NVID harmless for all lawful payments received from IMS under this Article.  Arata, Duren and Lewis will and hereby do forever disclaim any legal, equitable of otherwise right regarding Axenohl or the patents and trademarks referenced herein, except as hereinafter specified in Exhibit "C," hereto.

3.7    <u>Claim of Attorney Frijouf</u>.  NVID authorizes IMS to negotiate on its behalf with and shall cooperate with IMS in negotiating for a discount or a payment schedule with Attorney Frijouf, NVID's patent counsel.  IMS shall be responsible for the payment of the negotiated settlement amount with Attorney Frijouf, and shall use best efforts to cause Attorney Frijouf to hold NVID harmless.

3.8    <u>Cooperation with IMS in Enforcing Patent</u>.  The Parties, including but not limited to NVID and Arata, shall cooperate fully with IMS in enforcing and defending the Patent, the Trademark(s) and any regulatory approvals.  Upon written request, Arata shall promptly execute any and all documentation required of "the inventor" by any foreign or domestic patent or regulatory office in conjunction with Axenohl related filings of IMS.

3.9    <u>Release</u>.  NVID to execute and deliver the release in the form attached hereto as <u>Exhibit "C,"</u> fully and forever releasing IMS and ETI and remaining parties from any and all liability (except for the requirements hereunder) as set forth therein (the "<u>Release</u>").

3.10    <u>Attorneys' Fees and Costs</u>.  NVID to bear all of its own attorneys' fees and costs regarding the Florida Action, the San Diego Arbitration (and the Petition to Compel procedure incident thereto), and the joint drafting and/or implementation of this Agreement.

3.11    <u>Specific Grant of Indemnity</u>.  NVID hereby agrees to indemnify IMS and its successors and assigns in respect of any and all claims, losses, damages and expenses which may be incurred by it as a result of or arising out of any claims of ownership or interest in the Patent (including but not limited to claims of license, assignment or security interest(s)) by any party, except as expressly addressed in this Core Settlement Agreement. This Specific Grant of Indemnity is to be personally guaranteed on a joint and several basis by individuals Larson, Redden, and Gordon pursuant to the terms and conditions of the Guaranty attached hereto as Exhibit "G."

ORIGINAL

## ARTICLE 4
## OBLIGATIONS OF IMS

IMS shall deliver the documents and perform the obligations as set forth in this Article 4 effective as of Closing, or with respect to the Transfer of the IMS Shares, at the Release Date.

4.1    Transfer of IMS Shares.  In exchange for the transfer of the Patent and other NVID consideration described herein, IMS shall, in accordance with the procedure set forth in Article 1, at the Release Date, cooperate with the custodian Arbitrator and/or Escrow Holder in the transfer of a total of 700,000 shares of its common stock to NVID or its assignees, Arata, Duren and Lewis (the "IMS Shares").  The IMS Shares shall be validly issued, fully paid and non-assessable and, except as to those shares to be transferred directly to Arata, Duren and Lewis hereunder, shall be evidenced by certificates registered in the name of NVID.  NVID, Arata, Duren and Lewis acknowledge and agree that the IMS Shares shall be subject to restrictions on transfer or sale under Rule 144 of the Securities Act of 1933, as amended, and shall bear a legend to that effect as set forth in section 9.14 hereof.  NVID, Arata, Duren and Lewis acknowledge that the IMS Shares shall not be subject to any anti-dilution feature, and that (i) the number of IMS Shares shall not be increased because IMS has issued additional shares of its common stock (or any securities) as of the Closing Date or as of the Release Date; and (ii) NVID is not entitled to receive a certain percentage of the total IMS common stock outstanding.  Provided however, if any change is made in the IMS Shares prior to Closing or the Release Date through merger, consolidation, reorganization, recapitalization, reincorporation, stock dividend, dividend in property other than cash, stock split, liquidating dividend, combination of shares, exchange of shares, change in corporate structure or other transaction not involving the receipt of consideration by IMS, the IMS Shares will be appropriately adjusted in the type(s) and number of securities.

4.2    Royalty.  IMS to pay to NVID a royalty (the "Royalty") of 5% of the gross product sales revenues received by IMS in respect of the Patent, but shall not include any charges for shipping, handling, or returns, credits and applicable taxes ("Adjusted Gross Patent Revenues").  Unless the Royalty obligation is terminated as hereinafter specified, the Royalty shall be payable per this Agreement until March 6, 2018 ("Royalty Payment Term").  In the event that customer(s) return or request a refund regarding Axenohl for which a royalty has already been paid to NVID, the royalty for that sale will be deducted from NVID's next royalty payment, or at IMS's election, upon notice, NVID shall repay any such amounts to IMS within 30 days of written request therefore.  In the event that NVID is in breach of any material provision of this Agreement, which breach shall continue uncured for a period of ten (10) days after written notice to NVID by IMS, then IMS shall not be obligated to continue to pay the Royalty unless and until such breach is cured, and IMS, in addition to any and all other remedies allowed under law and/or equity, shall be entitled to offset against any amounts otherwise owing NVID any damages which have been proximately caused by such NVID breach(es).

4.3    Minimum Royalty.  IMS guaranties to NVID that the Royalty shall not be less than $1,000,000 for each of the periods (i) beginning on the date of this Agreement and ending on July 31, 2004 and (ii) each fiscal year thereafter (beginning on August 1, 2004) for the Term of the Royalty Payment (the "Minimum Royalty").  If the Minimum Royalty for any period set forth in the preceding sentence is less than $1,000,000, IMS shall have the right, in its sole and

absolute discretion, to either (x) pay NVID the Minimum Royalty in cash or IMS common stock subject to the restrictions of Rule 144 (potentially piggybacked under those circumstances referenced hereinafter section 10.6) equivalent to prevailing market price when the Minimum Royalty is due, or (y) transfer the Patent to NVID within 30 days of the end of the year for which the Minimum Royalty is due. If IMS elects to transfer the Patent to NVID, IMS shall be released of further obligation to pay the Royalty and Minimum Royalty. NVID shall thereafter grant to IMS a license to manufacture and distribute products covered by the Patent worldwide, reserving the non-exclusive right of NVID to sell Axen™ products covered by the Patent worldwide. NVID will receive a commission payment from IMS calculated at 5% of Adjusted Gross Sales.

    4.4    <u>Payment of Royalty</u>. IMS shall pay NVID the Royalty on a quarterly basis, such payments to be made within 30 days of the end of each IMS fiscal quarter during the Royalty Payment Term. On the date(s) of such quarterly payments, IMS shall concurrently provide NVID with a written statement evidencing the Adjusted Gross Patent Revenues, and the calculation of the Royalty. Commencing with the end of calendar 2004, and at the end of each subsequent calendar year for the Term of the Royalty Payment, IMS shall true up with NVID, such that NVID's royalty receipts for the applicable annual periods equal at least the Minimum Royalty of $1,000,000.00.

    4.5    <u>Audit Rights</u>. The following audit provision shall continue through the term of this Agreement and shall survive the termination of this Agreement insofar as applicable to royalty payment obligations accrued prior to such termination. NVID shall have the right once every twelve months, to audit the records and accounts of IMS for the limited purpose of establishing the amount of the Royalty payable hereunder. A certified public accounting firm and paid for solely by NVID shall conduct such audit. Any accounting firm retained for this purpose shall be adequately bound to keep confidential all information of IMS obtained during the course of or pursuant to the audit. In the event that any underpayment shall be determined, such underpayment shall be corrected by appropriate adjustment in payment that shall be due and payable within 30 days of the date of the completion of the audit. In the event an audit reveals a discrepancy in the amount owed to NVID and paid by IMS of at least 10%, the discrepancy shall be corrected within thirty days and the reasonable expenses of said audit shall be paid for by IMS.

    4.6    <u>Improvements</u>. NVID, Larson, Redden, and Arata represent and warrant that no known improvements in Axenohl exist as of the date hereunder. Should NVID and/or Arata later engage in the development of an improvement in Axenohl or the Patent (or the technology related in any way to either), NVID and/or Arata shall promptly notify IMS in writing, and shall keep IMS completely informed on a go-forward basis. Should NVID and/or Arata develop any Improvement to Axenohl, which Improvement cannot legally be utilized without the consent of the Holder of the Axenohl Patent, then NVID and/or Arata shall not attempt to utilize the Improvement except on terms and conditions acceptable to IMS, and with prior written permission. In the event the Improvement is "outside the Patent," the parties will use best efforts to reach a joint venture agreement regarding its use. If the Parties cannot agree on appropriate terms and conditions, then the Arbitrator shall be empowered to select fair and binding terms governing same. In no event shall NVID and/or Arata attempt to sell, assign, license or market the Improvement without affording IMS a first right of refusal.



4.7    Confidentiality. NVID will hold all IMS Confidential Information (as defined below) in the strictest confidence, using such measures as it uses to protect the confidentiality of similar information belonging to it, but in no event shall use less than reasonable measures. All written (or otherwise recorded) originals and copies of confidential information must be returned to IMS or destroyed upon a written request (made at any time) by IMS. The Parties will use Confidential Information solely to perform the activities under this Agreement and will disclose Confidential Information only to their employees or contractors with a need to know such information.

4.7.1    IMS Confidential Information. IMS Confidential Information shall include all proprietary and confidential information such as marketing and pricing information, supplier lists, and similar information disclosed by IMS to NVID, or known by NVID related to the Patent prior to the date of this Agreement. Notwithstanding the other provisions of this Agreement, nothing received by NVID shall be considered IMS Confidential Information which (i) is now available or becomes available to the public without breach of this Agreement, (ii) is released in writing by IMS, or (iii) is lawfully obtained from a Third Party or Parties.

4.8    Arbitration Claim and Award. IMS shall amend its San Diego Arbitration claim against NVID such as to allow the entry of an arbitration award on terms and conditions listed herein (the "Settlement"). Said arbitration award shall be binding and subject if necessary to being confirmed as an enforceable judgment by the United States District Court for the Southern District of California, or by the Superior Court of the State of California in and for the County of San Diego. The Parties agree that the Arbitrator shall retain exclusive jurisdiction to monitor the compliance of all Parties with the terms and conditions of this Core Settlement Agreement, and shall be empowered to rule on any dispute regarding the interpretation and enforcement thereof, and make any subsequent arbitral rulings which themselves will be binding and enforceable.

4.9    Termination of Contracts. IMS to cooperate in terminating all Axenohl contract rights between or among ETI, IMS and NVID, such that this settlement agreement shall become the operable contractual relationship among the Parties.

4.10    License. IMS shall grant Manufacturer's Representative Agreements and/or license agreements to, Watertronics, Aquabiotech Mexico and Sistecam, on the terms and conditions expressly stated in Exhibits "D," "E," and "F," hereto.

A.    **Aquabiotech Mexico:**

Territory: Mexico, non-exclusive (except as to Rotoplas):

Term: Beginning 01-01-02, and continuing for three years with a cancellation clause at each year-end for failure of Aquabiotech Mexico to meet any of the following sales minimums of IMS' Axen products:

Year One:    $150,000;

Year Two:    $300,000 Sales in that Year;

Year Three:    $500,000 Sales in that Year;

9    ORIGINAL

Renewable three-year option, yearly minimums of $1,000,000;

Regular Commission rate of 20% on adjusted gross;

Rotoplas commission rate 30%;

Aquabiotech Mexico shall cooperate with IMS by relinquishing designated markets (e.g., dental) within the Territory if necessary for IMS to complete an exclusivity agreement with a third party in a multinational transaction. Consideration to be negotiated between IMS and Aquabiotech, and if agreement cannot be reached, both parties agree to allow the Arbitrator to decide appropriate terms and conditions under the circumstances.

B.   **Watertronics**

Territory: UK (Britain, Wales, Scotland and N. Ireland)

Term: Beginning 01-01-02, and continuing for three years with a cancellation clause at each year-end for failure of Watertronics to meet any of the following sales minimums of IMS' Axen products:

Year One:     $50,000;

Year Two:     $300,000 Sales in that Year;

Year Three:   $500,000 Sales in that Year;

Renewable three-year option, yearly minimums of $1,000,000

Commission rate of 20% on adjusted gross;

Watertronics shall cooperate with IMS by relinquishing designated markets (e.g., dental) within the Territory if necessary for IMS to complete an exclusivity agreement with a third party in a multinational transaction. Consideration to be negotiated between IMS and Watertronics, and if agreement cannot be reached, both parties agree to allow the Arbitrator decide appropriate terms and conditions under the circumstances.

C.   **Sistecam**

IMS, ETI, NVID and Sistecam to cooperate in canceling the existing NVID/ETI/Sistecam contract. IMS to issue new contract to Sistecam on equivalent terms and conditions. Sistecam shall cooperate with IMS by relinquishing designated markets (e.g., dental) within the Territory if necessary for IMS to complete an exclusivity agreement with a third party in a multinational transaction. Consideration to be negotiated between IMS and Sistecam, and if agreement cannot be reached, both parties agree to allow the Arbitrator to decide appropriate terms and conditions under the circumstances.

4.11   *Negotiations with Patent Counsel.* Upon full execution hereunder, or as soon thereafter as practicable, IMS shall enter into negotiations with NVID's patent attorney, Robert

ORIGINAL

Frijouf for the payment of fees due by NVID, and use best efforts to obtain a release of NVID from attorney Frijouf by the Release Date. A payment schedule will be negotiated and IMS and Attorney Frijouf will hold NVID harmless for payment on expected discounted amount(s).

    4.12   <u>Resolutions of IMS Board</u>. IMS shall deliver to NVID the following resolutions of the IMS board of directors (the "<u>IMS Board</u>"), certified by the Secretary of IMS:

        4.12.1  Resolutions approving this Agreement, the transactions contemplated hereby and all of the obligations of IMS set forth herein.

        4.12.2  Resolutions authorizing Michael Krall, President and Dennis Atchley, Secretary, to execute this Agreement and all documents referred to herein on behalf of IMS.

    4.13   Resolutions authorizing either Michael Krall, President or Dennis Atchley, Secretary, to take any and all actions, execute any documents or instruments to implement the intent of this Agreement, without further approval of the IMS Board.

    4.14   <u>Subsequent Transfer of Patent</u>. In the event that IMS transfers, sells or assigns its ownership of the Patent, IMS shall in lieu of any Royalty and in complete cancellation of any and all Royalty obligations hereunder, pay NVID as received a percentage of the gross transfer proceeds from the Patent ("<u>Patent Transfer Fee</u>"), as follows:

| | |
|---|---|
| For Proceeds received in Year One of this Agreement | 15% |
| For Proceeds received in Year Two of this Agreement | 10% |
| For Proceeds received in Subsequent Years during the effective Term of this Agreement | 5% |

    4.15   <u>Release</u>. IMS to fully and forever release NVID, Larson, Gordon, Lewis, Edelson, Duffy and Redden from any and all liability (except for the requirements hereunder) as more fully set forth in the Release.

    4.16   <u>Attorneys' Fees and Costs</u>. IMS to bear its own attorneys' fees and costs regarding the Florida Action, and unless otherwise specifically indicated herein, the San Diego Arbitration (and the Petition to Compel procedure incident thereto), and the joint drafting and/or implementation of this Agreement.

**ARTICLE 5**
**OBLIGATIONS OF ETI**

    ETI shall deliver the documents and perform the obligations as set forth in this Article 5 effective as of Closing.



5.1   <u>Arbitration Award</u>. ETI shall amend its San Diego Arbitration claim against NVID such as to allow the entry of a binding arbitration award on terms and conditions listed herein.

5.2   <u>Attorneys' Fees and Costs</u>. ETI shall bear its own attorneys' fees incurred in the Florida Action, in the San Diego Arbitration (and in the Petition to Compel procedure incident thereto), and in the joint drafting and/or implementation of this Core Settlement Agreement.

5.3   <u>Termination of Contracts</u>. ETI to cooperate in terminating all Axenohl contract rights between or among ETI, IMS, Sistecam and/or NVID, such that this Agreement shall constitute the sole operable contract regarding the subject matter hereof among the Parties hereto.

5.4   <u>Release</u>. ETI to fully and forever release IMS and NVID, Watertronics, Aquabiotech Mexico, Larson, Gordon, Lewis, Edelson, Duffy and Redden from any and all liability (except for the requirements hereunder) as set forth in the Release (Exhibit "C").

## ARTICLE 6
## OBLIGATIONS OF WATERTRONICS

Watertronics shall deliver the documents and perform the obligations as set forth in this Article 6 effective as of Closing.

6.1   <u>Arbitration Award</u>. Watertronics shall cooperate with all Parties hereto in the entry of a binding arbitration award, such that it becomes if necessary a binding, final judgment entered by the United States District Court for the Southern District of California, or by the Superior Court of the State of California in and for the County of San Diego. In so doing, Watertronics voluntarily accedes to the subject matter and in personam jurisdiction of the American Arbitration Association (in the person of Arbitrator Jack Fitzmaurice, or his duly appointed successor-in-interest) in San Diego, California, and of the two referenced courts and submits to continuing jurisdiction of the Arbitrator and/or the courts to monitor compliance hereunder.

6.2   <u>Attorneys' Fees and Costs</u>. Watertronics shall bear its own attorneys' fees, if any, incurred in the Florida Action, in the San Diego Arbitration (and in the Petition to Compel procedure incident thereto), and in the joint drafting and/or implementation of this Core Settlement Agreement.

6.3   <u>Termination of Contracts</u>. Watertronics to cooperate with NVID to terminate any rights Watertronics may have under any prior Axenohl license agreement and will, and hereby does accept a superceding license agreement from IMS on the stated terms and conditions of Exhibit "D," hereto.

6.4   <u>Release</u>. Watertronics to fully and forever release IMS, Sistecam, Arata, Duren, Lewis, and ETI from any and all liability (except for the requirements hereunder) as more fully set forth in the Release.

# ARTICLE 7
## OBLIGATIONS OF AQUABIOTECH MEXICO

Aquabiotech Mexico shall deliver the documents and perform the obligations as set forth in this Article 6 effective as of Closing.

7.1     <u>Arbitration Award.</u>  Aquabiotech Mexico shall cooperate with all Parties hereto in the entry of a binding Arbitration Award, such that it becomes if necessary a binding, final judgment entered by the United States District Court for the Southern District of California, or by the Superior Court of the State of California in and for the County of San Diego.  In so doing, Aquabiotech Mexico voluntarily accedes to the subject matter and in personam jurisdiction of the American Arbitration Association (in the person of Arbitrator Jack Fitzmaurice, or his duly appointed successor-in-interest) in San Diego, California, and of the two referenced courts, and *submits to the continuing jurisdiction of the Arbitrator and/or the court(s) to monitor compliance* hereunder.

7.2     <u>Attorneys' Fees and Costs.</u>  Aquabiotech Mexico shall bear any attorneys' fees incurred by it in this Dispute, or in the joint drafting and/or implementation of this Core Settlement Agreement.

7.3     <u>Termination of Contracts</u>.  Aquabiotech Mexico to cooperate with NVID to terminate any rights Aquabiotech Mexico may have under any prior Axenohl license agreement and will, and hereby does, accept a superceding license agreement from IMS on the terms and conditions set forth in Exhibit "E," hereto.

7.4     <u>Release</u>.  Aquabiotech Mexico to fully and forever release IMS, Sistecam, Arata, Duren, Lewis, and ETI from any and all liability (except for the requirements hereunder), as more fully set forth in the Release (Exhibit "C.")

# ARTICLE 8
## OBLIGATIONS OF SISTECAM

Sistecam shall deliver the documents and perform the obligations as set forth in this Article 6 effective as of Closing.

8.1     <u>Arbitration Award.</u>  Sistecam shall cooperate with all Parties hereto in the entry of a binding Arbitration Award, such that it becomes if necessary a binding, final judgment entered by the United States District Court for the Southern District of California, or by the Superior Court of the State of California in and for the County of San Diego.  In so doing, Sistecam voluntarily accedes to the subject matter and in personam jurisdiction of the American Arbitration Association (in the person of Arbitrator Jack Fitzmaurice, or his duly appointed successor-in-interest) in San Diego, California, and of the two referenced courts, and submits to *the continuing jurisdiction of Arbitrator and/or the court(s) to monitor compliance hereunder.*

8.2     <u>Attorneys' Fees and Costs.</u>  Sistecam shall bear any attorneys' fees incurred by it in this Dispute, or in the joint drafting and/or implementation of this Core Settlement Agreement.

8.3   Termination of Contracts.  Sistecam to cooperate with NVID to terminate any rights Sistecam may have under any prior Axenohl license agreement and will, and hereby does, accept a superceding license agreement from IMS on the terms and conditions in the License Agreement set forth in Exhibit "F," attached hereto.

8.4   Release.  Sistecam to fully and forever release IMS, ETI, Larson, Redden, Lewis, Watertronics, Aquabiotech Mexico, and NVID from any and all liability (except for the requirements hereunder), as more fully set forth in the Release (Exhibit "C.")

## ARTICLE 9
## OBLIGATIONS OF INDIVIDUALS

9.1   Release.  The individual Parties to this Agreement shall perform the following obligations and deliver the following documents upon full execution:

9.1.1   Arata and Duren to fully and forever release NVID, Larson, Gordon, Redden, IMS and ETI from any and all liability (except for the requirements hereunder) as more fully as more fully set forth in the Release. Arata and Duren to expressly disclaim any rights to the Axenohl patent(s) except as otherwise enumerated herein.

9.1.2   NVID and each of its officers and Board of Director members to fully and forever release Arata, Duren, Lewis, IMS and ETI from any and all liability (except for the requirements hereunder) as more fully set forth in the Release.

## ARTICLE 10
## REPRESENTATIONS AND WARRANTIES OF IMS

IMS represents and warrants to all other Parties that the following are true and correct as of the date hereof and as of the Closing Date.

10.1   Organization, Good Standing, Power, etc.  IMS (i) is a corporation duly organized, validly existing and in good standing under the laws of the State of California; (ii) is qualified or authorized to do business as a corporation and is in good standing in all jurisdictions in which qualification or authorization may be required; and (iii) has all requisite corporate power and authority, licenses and permits to own or lease and operate its properties and carry on its business as presently being conducted and to execute, deliver and perform this Agreement and consummate the transactions contemplated hereby.

10.2   Articles of Incorporation and Bylaws.  Prior to execution of this Agreement by the Parties hereto, IMS has furnished to NVID's representatives, if requested, complete and correct copies of (i) its Articles of Incorporation, as amended to date, and (ii) its Bylaws, as amended to date. IMS' Articles of Incorporation and Bylaws are in full force and effect, and they are not in violation of any of the provisions thereof.

10.3   Capitalization.  The authorized capital stock of IMS consists solely of 20,000,000 shares of Common Stock, no par value, (the "IMS Common Stock"), of which, on the date hereof 6,416,939 shares are issued and outstanding. In addition the Company has 5,000,000 shares of Preferred Stock authorized, none of which are presently outstanding. At the Release Date

ORIGINAL

700,000 shares of IMS Rule 144 Common Stock will have been lawfully and validly issued collectively to NVID, Arata, Duren, and Lewis. All of such issued and outstanding shares of the IMS Common Stock have been duly authorized and validly issued and are fully paid and non-assessable with no personal liability attaching to the ownership thereof, and were not issued in violation of the preemptive or other rights of any person.

10.4    Authorization of Agreement. This Agreement and each of the documents that IMS will deliver or file as required by this Agreement (the "IMS Documents") has been or will be at Closing, duly and validly authorized, executed and delivered by IMS.

10.5    No Adverse Changes. Since the date of IMS' most recent financial statements, there has been no material adverse change in IMS' financial condition, assets, liabilities, or business.

10.6    Piggyback Registration Rights. If at any time or from time to time within six months from the date of this Agreement, IMS shall determine to register securities for its own account for a public offering or the account of any of its stockholders to publicly sell their securities, other than a registration on Form S-1 or S-8 relating solely to employee stock option or purchase plans, IMS will promptly notify NVID of such registration and if NVID notifies IMS of its desire to be included in such registration within five business days of IMS's notice to NVID, IMS shall include the IMS shares issued to NVID in such registration. In the event no such registration statement is filed within six months from the date of this Agreement, IMS shall file a registration statement for the shares issued to NVID to allow the public sale thereof on or before the 180th day from the date of this Agreement. IMS reserves the right to include securities for its own account for a public offering or the account of any other of its stockholders to publicly sell their securities in such registration statement. IMS at its expense will keep such registration effective for a period of 180 days or until NVID has completed the distribution described in the registration statement relating thereto, whichever first occurs; and furnish such number of prospectuses and other documents incident thereto as NVID from time to time may reasonably request.

10.6.1  Underwriting Conditions. If the registration is for a public offering involving an underwriting in excess of $2,500,000, IMS shall so advise NVID. In such event the right of NVID to registration pursuant to this Section 10.6 shall be conditioned upon NVID's entering into an underwriting agreement in customary form with the underwriter or underwriters selected for such underwriting by IMS. Notwithstanding any other provision of this Section 10.6 except the affirmative obligation to file a separate registration for the NVID shares on or before the 180th day from the date of this Agreement, if the underwriter determines that marketing factors require a limitation of the number of shares to be underwritten, , the underwriter may limit the number of IMS Shares issued to NVID to be included in the registration and underwriting, or may exclude the IMS Shares issued to NVID entirely from such registration and underwriting.

10.6.2  Expenses of Registration. All expenses incurred in connection with any registration pursuant to this Section 10.6 shall be borne by the Company except IMS shall not be required to pay fees of legal counsel of NVID acting on behalf of NVID as a selling securities holder.

## ARTICLE 11
## REPRESENTATIONS AND WARRANTIES OF NVID

NVID represents and warrants to all other Parties that the following are true and correct as of the date hereof and as of the Closing Date:

11.1   <u>Organization, Good Standing, Power, etc</u>.  NVID (i) is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware and (ii) has all requisite corporate power and authority, licenses, permits and franchises to own or lease and operate its properties and carry on its business as presently being conducted and to execute, deliver and perform this Agreement and consummate the transactions contemplated hereby.

11.2   <u>Authorization</u>.  This Agreement, the Assignment of Patent and each of the documents that NVID will deliver or file as required by this Agreement (the "NVID Documents") have been or will be at Closing duly and validly authorized, executed and delivered by NVID.  No authorizations or approvals of the shareholders, board of directors, or officers, other than those taken as set forth in the resolutions set forth in Section 3.4 hereof are required in order for NVID to execute and deliver the NVID Documents and consummate the transactions contemplated thereby.  The NVID Documents are enforceable against NVID in accordance with the respective terms thereof.

11.3   <u>Litigation</u>.  With the exception of the existing litigation against IMS now pending before the U.S. District Court in the Middle District of Florida and the pending San Diego Arbitration, there is no material claim, action, suit, proceeding, arbitration, investigation or inquiry pending before any federal, state, municipal, foreign or other court or governmental or administrative body or agency, or any private arbitration tribunal, or to the knowledge of NVID threatened, against, relating to or affecting NVID or any of their properties or business, or the transactions contemplated by this Agreement; nor to the knowledge of NVID is there any basis for any such material claim, action, suit, proceeding, arbitration, investigation or inquiry which may have any adverse effect upon the assets, properties or business of NVID, or the transactions contemplated by this Agreement.  Neither NVID nor any officer, director, partner or employee of NVID, has been permanently or temporarily enjoined by order, judgment or decree of any court or other tribunal or any agency from engaging in or continuing any conduct or practice in connection with the business engaged in by NVID.  There is not in existence at present any order, judgment or decree of any court or other tribunal or any agency enjoining or requiring NVID to take any material action of any kind or to NVID and their respective business, properties or assets are subject or bound.  NVID is not in default under any order, license, regulation or demand of any federal, state or municipal or other governmental agency or with respect to any order, writ, injunction or decree of any court which would have a materially adverse impact upon NVID's operations or affairs as they relate to NVID's obligations hereunder.

11.4   <u>Ownership of Patent</u>.  As of the date hereof, and as of the date of effective Assignment of the Patent to IMS, NVID shall own the Patent, free and clear of any liens, encumbrances, escrows, licenses, conflicting or undisclosed prior art, charges, pledges, options, mortgages, assignments, security interests, claims, indentures, licenses, security agreements, restrictions (whether on sale, transfer, disposition, or otherwise), defects of title, irregularities of

ORIGINAL

title or other imperfection of title of every type and description, whether imposed by law, agreement, understanding, or otherwise ("Encumbrance"). Upon delivery to IMS of the Assignment of Patent, IMS will acquire good and indefeasible title to the Patent, free and clear of any Encumbrances except as stated herein.

11.5   Other Assets. NVID owns other assets, the fair market value of which equal or exceed the fair market value of the Patent, and will continue to own such other assets after Closing.

11.6   Investment Representation. NVID, Arata, Duren and Lewis are acquiring shares of IMS Common Stock issuable hereunder for their own respective accounts and agree not to distribute any shares issuable thereunder within the meaning of the Securities Act of 1933 (the 1933 Act), except as otherwise provided herein, unless an appropriate registration statement has been filed with the SEC or unless an exemption from registration under the 1933 Act is available according to an acceptable opinion(s) of counsel for, as applicable, NVID, Arata, Duren and/or Lewis provided to IMS. Each certificate for shares issued shall be stamped or otherwise imprinted with the following or a substantially similar legend:

> "The shares represented by this certificate have not been registered under the Securities Act of 1933 (the "Act") nor any state securities laws. These shares may not be offered for sale, sold or otherwise transferred except pursuant to an effective registration statement under the Act or pursuant to an opinion of counsel acceptable to IMS that an exemption from such registration is available."

The foregoing restriction on transfer shall remain in existence for the applicable period, as set forth in Rule 144 after the expiration of which all shares then owned or thereafter acquired pursuant to this Agreement shall be registered on the books of IMS without any further restraint of alienation. Any shares issued containing the foregoing Restrictive Legend may, subject to the requirements of Rule 144 and applicable state and federal law, be exchanged for shares without Restrictive Legend at any time after the expiration of two (2) year from the date of The Release Date at the option of the holder, provided the holder is not an "affiliate" of IMS at the time of such request. By execution of this Agreement, NVID, Arata, Duren and Lewis represent and warrant that they each have sufficient investment sophistication and ability to take the financial risks associated with this transaction.

## ARTICLE 12
## REPRESENTATIONS AND WARRANTIES OF AQUABIOTECH MEXICO

Aquabiotech Mexico represents and warrants to all other Parties that the following are true and correct as of the date hereof and as of the Closing Date:

12.1   Organization, Good Standing, Power, etc. Aquabiotech Mexico (i) is a corporation duly organized, validly existing and in good standing under the laws of the Republic of Mexico and (ii) has all requisite corporate power and authority, licenses, permits and franchises to own or lease and operate its properties and carry on its business as presently being



conducted and to execute, deliver and perform this Agreement and consummate the transactions contemplated hereby.

12.2    Authorization. This Agreement, and each of the documents that Aquabiotech Mexico will deliver or file as required by this Agreement (the "Aquabiotech Mexico Documents") have been or will be at Closing duly and validly authorized, executed and delivered by Aquabiotech Mexico. No authorizations or approvals of the shareholders, board of directors, or officers, other than those taken are required in order for Aquabiotech Mexico to execute and deliver the Aquabiotech Mexico Documents and consummate the transactions contemplated thereby. The Aquabiotech Mexico Documents are enforceable against Aquabiotech Mexico in accordance with the respective terms thereof, and shall be executed by authorized representative, Director General Federico Rodriquez.

## ARTICLE 13
## REPRESENTATIONS AND WARRANTIES OF WATERTRONICS

Watertronics represents and warrants to all other Parties that the following are true and correct as of the date hereof and as of the Closing Date:

13.1    Organization, Good Standing, Power, etc. Watertronics (i) is a corporation duly organized, validly existing and in good standing under the laws of The United Kingdom and (ii) has all requisite corporate power and authority, licenses, permits and franchises to own or lease and operate its properties and carry on its business as presently being conducted and to execute, deliver and perform this Agreement and consummate the transactions contemplated hereby.

13.2    Authorization. This Agreement, and each of the documents that Watertronics will deliver or file as required by this Agreement (the " Watertronics Documents") have been or will be at Closing duly and validly authorized, executed and delivered by Watertronics. No authorizations or approvals of the shareholders, board of directors, or officers, other than those taken are required in order for Watertronics to execute and deliver the Watertronics Documents and consummate the transactions contemplated thereby. The Watertronics Documents are enforceable against Watertronics in accordance with the respective terms thereof, and shall be executed by authorized representative, Managing Director Richard M. Goodall.

## ARTICLE 14
## REPRESENTATIONS AND WARRANTIES OF INDIVIDUALS

Arata, Duren, Gordon, Larson, Lewis and Redden (the "Individual Parties") each represents and warrants to all other Parties that the following are true and correct as of the date hereof and as of the Closing Date:

14.1    This Agreement, and each of the documents that each of the Individual Parties, will respectively deliver or file as required by this Agreement (the "Individual Party Documents") have been or will be at Closing duly and validly authorized, executed and delivered by the respective Individual Parties. No authorizations, approvals or other actions, other than those taken are required in order for the Individual Parties to execute and deliver the Individual Party Documents and consummate the transactions contemplated thereby. The Individual Party



Documents are enforceable against the Individual Parties, respectively, in accordance with the respective terms thereof.

## ARTICLE 15
## SPECIAL COVENANTS

15.1     Exchange of Information.  Each Party shall cooperate fully by exchanging information requested by the other Party in a timely manner.  Without in any manner reducing or otherwise mitigating the representations contained herein, each Party and/or its attorneys shall have the opportunity to meet with the accountants and attorneys of the other Party to discuss its respective legal and financial condition and this transaction.  If this transaction is not completed, all documents received by each Party and/or his or its attorney shall be returned to the other Party and all such information so received shall be treated as confidential.

15.2     Conduct of Business.  Upon full execution hereunder, IMS and NVID shall each conduct their business in the normal course, and in accord with the terms and conditions of this Core Settlement Agreement and its appended Exhibits.

## ARTICLE 16
## CONDITIONS PRECEDENT TO OBLIGATIONS OF PARTIES

16.1     Conditions Precedent to Obligations of NVID. The obligations of NVID hereunder are subject to fulfillment, or waiver thereof by NVID, prior to or at the Closing of each of the following conditions:

(a)     Closing Date.  The documents are approved and accepted by all Parties as of the scheduled date of November 30, 2001.

(b)     Representations and Warranties.  The representations and warranties of IMS shall be true and accurate in all material respects as of the Closing Date.

(c)     Performance.  IMS and ETI shall have performed and complied with all agreements and conditions required by this Agreement to be performed or complied with by them prior to or at the Closing.

(d)     No Adverse Changes.  There shall not have been, since the date of the latest audited financial statements of IMS, any "Material Adverse Change," as defined below, in IMS' financial condition, assets, liabilities or business.  A "Material Adverse Change" shall mean any change, effect or circumstance that (i) is materially adverse to the financial condition or results of operations of the business of IMS (provided, however, that for purposes of determining whether there has been a "Material Adverse Change" with respect to IMS (A) any adverse change resulting from or relating to general business or economic conditions affecting the economy as a whole shall be disregarded, (B) any adverse change resulting from or relating to conditions generally affecting the industries in which IMS or its customers or suppliers compete or participate shall be disregarded and (C) any adverse change resulting from or relating to the announcement, disclosure or pendency of the transactions contemplated by this Agreement shall be disregarded), or (ii) would prevent IMS or NVID, as the case may be, from carrying out its obligations under this Agreement.

(e)  Opinion of IMS' Counsel.  IMS shall have delivered to NVID an opinion of IMS' counsel, Dennis Brovarone, Attorney at Law, dated the Closing Date to the effect that: (i) IMS is a corporation duly organized, validly existing and in good standing under the laws of the State of California, has all requisite power to carry on its business as now being conducted and to execute, deliver and perform this Agreement and to perform its obligations thereunder; (ii) IMS is duly qualified to do business as a corporation and is in good standing in each jurisdiction in which the nature of the business conducted by it or the property owned, operated or leased by it makes such qualification necessary; (iii) this Agreement and each of the IMS Documents have been duly authorized by all necessary corporate action on the part of IMS, have been duly executed and delivered by IMS and constitute the legal, valid and binding obligations of IMS enforceable in accordance with the respective terms thereof, except as enforceability thereof may be limited by the insolvency or other laws affecting the rights of creditors and the enforcement of remedies; (iv) IMS has prepared and filed with the SEC all periodic reports required of it under the 1934 Act; (v) the Shares issuable hereunder have been duly authorized and will be validly issued; fully paid and non-assessable with no personal liability attaching to the ownership thereof; (vi) neither the execution, delivery and performance by IMS of this Agreement, the IMS Documents, nor compliance by IMS with the terms and provisions hereof, will conflict with, or result in a breach of the terms, conditions or provisions of, or will constitute a default under, the Articles of Incorporation or Bylaws of IMS or any agreement or instrument known to such counsel to which IMS is a Party or by which IMS or any of its properties or assets are bound; (vii) there are no actions, suits or proceedings pending or, to the knowledge of such counsel, threatened against IMS before any court or administrative agency, which have, in the opinion of such counsel, if adversely decided, will have any material adverse effect on the business or financial condition of IMS or which questions the validity of this Agreement or the Shares issuable hereunder.  In rendering his opinion, counsel shall be allowed to rely on written representations of officers and directors of the Company as to factual matters.

(f)  Current Status with Securities and Exchange Commission.  IMS shall have prepared and filed with the SEC all periodic reports required under the 1934 Act pursuant to Section 12(g) thereof.

(g)  Due Diligence.  NVID shall have completed and be satisfied with its due diligence investigation of the representations and warranties of IMS.

16.2   Conditions Precedent to Obligations of IMS.  The obligations of IMS hereunder are subject to fulfillment, or waiver thereof by IMS, prior to or at the Closing of each of the following conditions:

(a)  Closing Date.  The documents are approved and accepted by all Parties as of the scheduled date of November 30, 2001.

(b)  Representations and Warranties.  The representations and warranties of NVID made pursuant to Article 11 above, shall be true and accurate in all material respects as of the Closing Date.

ORIGINAL

(c) <u>Performance</u>. NVID shall have performed and complied with all agreements and conditions required by this Agreement to be performed or complied with by it prior to or at the Closing including but not limited to:

(d) <u>No Adverse Changes</u>. There shall not have been, since the date of the latest audited financial statements of NVID, any Material Adverse Change (as defined below) in its financial condition, assets, including the Patent, liabilities or business. A "<u>Material Adverse Change</u>" shall mean any change, effect or circumstance that (i) is materially adverse to the financial condition or results of operations of the business of NVID (provided, however, that for purposes of determining whether there has been a "Material Adverse Change" with respect to NVID (A) any adverse change resulting from or relating to general business or economic conditions affecting the economy as a whole shall be disregarded, (B) any adverse change resulting from or relating to conditions generally affecting the industries in which NVID or its customers or suppliers compete or participate shall be disregarded and (C) any adverse change resulting from or relating to the announcement, disclosure or pendency of the transactions contemplated by this Agreement shall be disregarded), or (ii) would prevent NVID, as the case may be, from carrying out its obligations under this Agreement.

(e) <u>Opinion of NVID's Counsel</u>. NVID shall have delivered to IMS, an opinion of their counsel, Thomas P. McNamara, Attorney at Law, dated the Closing Date to the effect that: (i) NVID is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, have all requisite power to carry on its business as now being conducted and to execute, deliver and perform this Agreement and to perform their obligations thereunder; (iii) this Agreement and each of the NVID Documents have been duly authorized by all necessary corporate action on the part of NVID, have been duly executed and delivered by NVID and constitute the legal, valid and binding obligations of NVID, enforceable in accordance with the respective terms thereof, except as enforceability thereof may be limited by the insolvency or other laws affecting the rights of creditors and the enforcement of remedies; (iv) neither the execution, delivery and performance by NVID of this Agreement, the NVID Documents, nor compliance by NVID with the terms and provisions thereof, will conflict with, or result in a conflict with the Certificate of Incorporation or Bylaws of NVID. In rendering their opinion, counsel shall be allowed to rely on written representations of officers and directors of the Company as to factual matters.

(f) <u>Due Diligence</u>. IMS shall have completed and be satisfied with its due diligence investigation of the representations and warranties of NVID.

16.3   <u>Conditions Precedent to the Release Date.</u> IMS shall, prior to the Release Date, have received fully executed original signatures from all Parties, and the Arbitrator shall have issued a binding arbitration award consistent with the terms and conditions of the Core Settlement Agreement and its Exhibits.

## ARTICLE 17
## INDEMNIFICATION

The Parties shall indemnify each other as provided in this Article.

17.1    <u>Indemnity Obligations</u>.  To the fullest extent permitted by law, each Party (the "<u>Indemnifying Party</u>") agrees to defend, indemnify and hold harmless all other Parties, and their respective owners, shareholders, controlling persons, parent and subsidiaries, affiliates, officers, directors, attorneys, agents and employees (the "<u>Indemnified Parties</u>") from and against any and all claims, defense costs, including attorneys' fees, damages, and other liabilities, to the extent arising from or in any way related to (i) the breach by the Indemnifying Party of any of its obligations or performance required by this Agreement and (ii) the failure of the Indemnifying Party's representations and warranties to be true and correct either when made, as of the date of Closing, or thereafter.

## ARTICLE 18
## MISCELLANEOUS

18.1    <u>Dispute Resolution</u>.  The Parties agree that the American Arbitration Association of San Diego California (in the person of the Arbitrator) shall maintain exclusive jurisdiction over any questions concerning the interpretation or enforcement of this Agreement and all of its component exhibits. Should legal action to enforce this Agreement, or any portion hereof, be commenced, the prevailing party to such binding arbitration shall be entitled to recover, in addition to any award by the arbitrator, its attorney fees incurred in such action.

18.2    <u>Notices</u>.  Unless otherwise specifically provided in this Agreement, all notices or other communications required or permitted under this Agreement shall be in writing, and shall be personally delivered or sent by registered or certified mail, postage prepaid, return receipt requested, or sent by facsimile, provided that the fax cover sheet contains a notation of the date and time of transmission, and shall be deemed received: (i) if personally delivered, upon the date of delivery to the address of the person to receive such notice, (ii) if mailed in accordance with the provisions of this paragraph, two (2) business days after the date placed in the United States mail, and (iii) if mailed other than in accordance with the provisions of this paragraph or mailed from outside the United States, upon the date of delivery to the address of the person to receive such notice, or (iv) if given by facsimile, when sent.  Notices shall be given at the following addresses:

| | |
|---|---|
| If to IMS or ETI: | 1725 Gillespie Way<br>El Cajon, CA 92020<br>Attention: Michael Krall<br>Fax No.: 619-596-8790 |
| If to NVID, Aqua Bio Technologies Inc., Gordon, Larson, Lewis, Duffy, Edelson or Redden: | 28163 U.S. 19 N., Suite 302<br>Clearwater, FL 33761<br>Attention: David Larson<br>Fax No.: 727-669-4701 |

ORIGINAL

| | |
|---|---|
| If to Aqua Bio Technologies S.A. de C.V.: | Creston 357<br>Pedregal de San Angel<br>Mexico, D.F. 01900<br>Attention: Federico Rodriguez<br>Fax No.: 011-525-568-9813 |
| If to Watertronics: | Well Cottage High Street<br>Wargrave Berks, RG10800<br>England<br>Attention: Dick Goodall<br>Fax No.: 011-44-118-940-3615 |
| If to Sistecam S.A. or Arata: | Del Triangulo en Rohrmoser<br>Costado Este de la Farmacia, Rohrmoser<br>Pavas, San Jose<br>Costa Rica<br>Attention: Andrew Arata<br>Fax No.: 775-640-1658 |
| If to Duren: | George L. Duren<br>2531 216 street<br>Lake City, FL 32024 |
| If to Lewis: | Charles Lewis<br>5135 New Ranch Rd.<br>El Cajon, CA 92020 |

The relevant Party may change the address for delivery of notices by giving notice of such change in accordance with this paragraph.

18.3    Interpretation.  All Parties have participated in the negotiation and preparation of this Agreement, and the construction of this Agreement shall not be interpreted in favor of or against any particular Party as result of the respective contributions of the Parties to the drafting of this Agreement.

18.4    Expenses and Further Assurances.  The Parties hereto shall each bear their respective costs and expenses incurred in connection with the transactions contemplated by this Agreement.  Each Party hereto will use its best efforts provide any and all additional information, execute and deliver any and all documents or other written material and perform any and all acts necessary to carryout the intent of this Agreement.

18.5    Survival of Representations, Warranties and Covenants. All of the representations, warranties and covenants made as of the date of this Agreement and as of Closing, shall survive the closing of this transaction.

ORIGINAL

18.6   <u>Successors and Assigns</u>.  All representations, warranties, covenants and agreements in this Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, representatives, successors and assigns whether so expressed or not.

18.7   <u>Governing Law</u>.  This Agreement is to be governed by and interpreted under the laws of the State of California, without giving effect to the principles of conflicts of laws thereof. In addition, the Parties agree to exclusive jurisdiction to confirm and/or vacate or modify the arbitral award(s) of the Arbitrator, in the State or Federal Courts of the State of California sitting in the County of San Diego.

18.8   <u>Section and Other Headings</u>.  The section and other headings herein contained are for convenience only and shall not be construed as part of this Agreement.

18.9   <u>Counterparts</u>.  This Agreement may be executed in the original or by fax, in any number of counterparts and each counterpart shall constitute an original instrument, but all such separate counterparts shall constitute but one and the same instrument.

18.10   <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties hereto and supersedes all prior agreements, understandings and arrangements, oral or written, between the Parties hereto with respect to the subject matter hereof.  This Agreement may not be amended or modified, except by a written agreement signed by all Parties.

18.11   <u>Severability</u>.  Any term or provision of this Agreement which is invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffectual to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

18.12   <u>Confidentiality</u>.  Each Party hereto agrees with the other Parties that, unless and until this Agreement has been consummated, or for a period of one (1) year from the date of this Agreement if the transaction contemplated by this Agreement is not consummated it and its representatives will hold in strict confidence all data and information obtained with respect to the other Party from any representative, Officer, Director or employee, or from any books or records or from personal inspection, of such other Party, and shall not use such data or information or disclose the same to others, except: (i) to the extent such data or information has theretofore been publicly disclosed, is a matter of public knowledge or is required by law to be publicly disclosed; and (ii) to the extent that such data or information must be used or disclosed in order to consummate the transactions contemplated by this Agreement.  The foregoing notwithstanding, IMS and NVID shall be authorized to publicly announce the execution and closing of this Agreement, using a mutually acceptable press release.

ORIGINAL

IN WITNESS WHEREOF, the corporate Parties hereto have caused this Agreement to be executed by their respective Officers, hereunto duly authorized, as of the date first above written.

NVID INTERNATIONAL, INC., and Aqua Bio Technologies Inc., its wholly owned subsidiary

By: _____
    David Larson, President


By: _____
    Michael Redden, Secretary/Treasurer

ETIH20 CORPORATION



By: _____
    Andrew B. Arata, President

WATERTRONICS LTD.



By: _____
    Richard M. Goodall, Managing Director

INNOVATIVE MEDICAL SERVICES

By: _____
    Michael L. Krall, President


By: _____
    Dennis Atchley, Secretary

AQUA BIO TECHNOLOGIES, S. A. DE C. V.



By: _____
    Federico Rodriguez, Director General

ANDREW B. ARATA, INDIVIDUALLY AND ON BEHALF OF SISTECAM, S.A., A COSTA RICAN CORPORATION


By: _____
    Andrew B. Arata

//

//

//

//

//

//

//

//

ORIGINAL

IN WITNESS WHEREOF, the corporate Parties hereto have caused this Agreement to be executed by their respective Officers, hereunto duly authorized, as of the date first above written.

NVID INTERNATIONAL, INC., and Aqua Bio Technologies Inc., its wholly owned subsidiary

By: _____
    David Larson, President


By: _____
    Michael Redden, Secretary/Treasurer

ETIH20 CORPORATION


By: _____
    Andrew B. Arata, President

WATERTRONICS LTD.


By: _____
    Richard M. Goodall, Managing Director

//

//

//

//

//

//

//

//

INNOVATIVE MEDICAL SERVICES


By: _____
    Michael L. Krall, President


By: _____
    Dennis Atchley, Secretary

AQUA BIO TECHNOLOGIES, S. A. DE C. V.


By: _____
    Federico Rodriguez, Director General

ANDREW B. ARATA, INDIVIDUALLY AND ON BEHALF OF SISTECAM, S.A., A COSTA RICAN CORPORATION


By: _____
    Andrew B. Arata

IN WITNESS WHEREOF, the corporate Parties hereto have caused this Agreement to be executed by their respective Officers, hereunto duly authorized, as of the date first above written.

NVID INTERNATIONAL, INC., and Aqua Bio Technologies Inc., its wholly owned subsidiary

INNOVATIVE MEDICAL SERVICES

By: _____
David Larson, President

By: _____
Michael L. Krall, President


By: _____
Michael Redden, Secretary/Treasurer

By: _____
Dennis Atchley, Secretary

ETIH20 CORPORATION

AQUA BIO TECHNOLOGIES, S. A. DE C. V.

By: _____
Andrew B. Arata, President

By: _____
Federico Rodriguez, Director General

WATERTRONICS LTD.

ANDREW B. ARATA, INDIVIDUALLY AND ON BEHALF OF SISTECAM, S.A., A COSTA RICAN CORPORATION

By: _____
Richard M. Goodall, Managing Director

By: _____
Andrew B. Arata

//

//

//

//

//

//

//

//

Core Settlement Agreement 11.15.01.doc

25

IN WITNESS WHEREOF, the corporate Parties hereto have caused this Agreement to be executed by their respective Officers, hereunto duly authorized, as of the date first above written.

NVID INTERNATIONAL, INC., and Aqua Bio Technologies Inc., its wholly owned subsidiary

INNOVATIVE MEDICAL SERVICES

By: _____
    David Larson, President

By: _____
    Michael L. Krall, President

By: _____
    Michael Redden, Secretary/Treasurer

By: _____
    Dennis Atchley, Secretary

ETIH20 CORPORATION

AQUA BIO TECHNOLOGIES, S. A. DE C. V.

By: _____
    Andrew B. Arata, President

By: _____
    Federico Rodriguez, Director General

WATERTRONICS LTD.

ANDREW B. ARATA, INDIVIDUALLY AND ON BEHALF OF SISTECAM, S.A., A COSTA RICAN CORPORATION

By: _____
    Richard M. Goodall, Managing Director

By: _____
    Andrew B. Arata

//

//

//

//

//

//

//

//

Core Settlement Agreement 11.15.01.doc

25

IN WITNESS WHEREOF, the corporate Parties hereto have caused this Agreement to be executed by their respective Officers, hereunto duly authorized, as of the date first above written.

NVID INTERNATIONAL, INC., and Aqua Bio Technologies Inc., its wholly owned subsidiary

By: _____
David Larson, President

By: _____
Michael Redden, Secretary/Treasurer

ETIH20 CORPORATION

By: _____
Andrew B. Arata, President

WATERTRONICS LTD.

By: _____
~~Richard M. Goodell~~, Managing Director
ALAN C. ALLDAY

//
//
//
//
//
//
//
//

INNOVATIVE MEDICAL SERVICES

By: _____
Michael L. Krall, President

By: _____
Dennis Atchley, Secretary

AQUA BIO TECHNOLOGIES, S. A. DE C. V.

By: _____
Federico Rodriguez, Director General

ANDREW B. ARATA, INDIVIDUALLY AND ON BEHALF OF SISTECAM, S.A., A COSTA RICAN CORPORATION

By: _____
Andrew B. Arata

Core Settlement Agreement 11.15.01.doc

25

Case 3:05-cv-02039-L-NLS   Document 1   Filed 10/25/05   Page 38 of 43

IN WITNESS WHEREOF, the corporate Parties hereto have caused this Agreement to be executed by their respective Officers, hereunto duly authorized, as of the date first above written.

NVID INTERNATIONAL, INC., and Aqua Bio Technologies Inc., its wholly owned subsidiary

INNOVATIVE MEDICAL SERVICES

By: _____
    David Larson, President

By: _____
    Michael L. Krall, President

By: _____
    Michael Redden, Secretary/Treasurer

By: _____
    Dennis Atchley, Secretary

ETIH2O CORPORATION

AQUA BIO TECHNOLOGIES, S. A. DE C. V.

By: _____
    Andrew B. Arata, President

By: _____
    Federico Rodriguez, Director General

WATERTRONICS INTERNATIONAL LTD.

ANDREW B. ARATA, INDIVIDUALLY AND ON BEHALF OF SISTECAM, S.A., A COSTA RICAN CORPORATION

By: ~~Richard M. Goodall,~~ Managing Director
ALAN C. ALLDAY

By: _____
    Andrew B. Arata

//

//

//

//

//

//

//

//

IN WITNESS WHEREOF, the corporate Parties hereto have caused this Agreement to be executed by their respective Officers, hereunto duly authorized, as of the date first above written.

NVID INTERNATIONAL, INC., and Aqua Bio Technologies Inc., its wholly owned subsidiary

INNOVATIVE MEDICAL SERVICES

By: _____
David Larson, President

By: _____
Michael L. Krall, President

By: _____
Michael Redden, Secretary/Treasurer

By: _____
Dennis Atchley, Secretary

ETIH20 CORPORATION

AQUA BIO TECHNOLOGIES, S. A. DE C. V.

By: _____
Andrew B. Arata, President

By: _____
Federico Rodriguez, Director General

WATERTRONICS LTD.

ANDREW B. ARATA, INDIVIDUALLY AND ON BEHALF OF SISTECAM, S.A., A COSTA RICAN CORPORATION

By: _____
Richard M. Goodall, Managing Director

By: _____
Andrew B. Arata

//

//

//

//

//

//

//

//

25

DAVID LARSON                              MICHAEL REDDEN

✓By: _____             ✓By: _____
   David Larson, an individual             Michael Redden, an individual

DR. CHARLES LEWIS                         GEORGE L. DUREN

By: _____              ✓By: _____
   Charles Lewis, an individual            George L. Duren, an individual

STEVEN GORDON


By: _____
   Steven Gordon, an individual

ORIGINAL

DAVID LARSON

By: _David Larson_
David Larson, an individual

DR. CHARLES LEWIS

By: _____
Charles Lewis, an individual

STEVEN GORDON

By: _____
Steven Gordon, an individual

MICHAEL REDDEN

By: _Michael Redden_
Michael Redden, an individual

GEORGE L. DUREN

By: _____
George L. Duren, an individual

26

Core Settlement Agreement 11.15.01.doc

DAVID LARSON                        MICHAEL REDDEN


By: _____        By: _____
    David Larson, an individual          Michael Redden, an individual

DR. CHARLES LEWIS                   GEORGE L. DUREN


By: _____        By: _____
    Charles Lewis, an individual         George L. Duren, an individual

STEVEN GORDON


By: _____
    Steven Gordon, an individual

JS44
(Rev. 07/89)

## CIVIL COVER SHEET

FILED

sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

05 OCT 25 PM 4: 13

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Pure Bioscience, a California corporation | Falken Industries, Ltd., a New Jersey corporation |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED San Diego, California PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Trenton, New Jersey (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Charles E. Brumfield, Esq. (56636) 1725 Gillespie Way El Cajon, CA 92020 619-596-8600 x138 | '05 CV 2020   JAH (AJB) |

| II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY) | III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only) |
|---|---|

SD

* 1 U.S. Government Plaintiff    [X] 3 Federal Question (U.S. Government Not a Party)

* 2 U.S. Government Defendant    [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | • 1 | Incorporated or Principal Place of Business in This State | • 4 | • 4 |
| Citizen of Another State | • 2 | [X] 2 | Incorporated and Principal Place of Business in Another State | • 5 | • 5 |
| Citizen or Subject of a Foreign Country | • 3 | • 3 | Foreign Nation | • 6 | • 6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Petition to Confirm Arbitral Award as a Federal Judgment.
[Federal Arbitration Act]

09 : 0001

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| • 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | • 610 Agriculture | • 422 Appeal 28 USC 158 | • 400 State Reapportionment |
| • 120 Marine | • 310 Airplane | • 362 Personal Injury-Medical Malpractice | • 620 Other Food & Drug | • 423 Withdrawal 28 USC 157 | • 410 Antitrust |
| • 130 Miller Act | • 315 Airplane Product Liability | | • 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | • 430 Banks and Banking |
| • 140 Negotiable Instrument | • 320 Assault, Libel & Slander | • 365 Personal Injury - Product Liability | • 630 Liquor Laws | • 820 Copyrights | • 450 Commerce/ICC Rates/etc. |
| • 150 Recovery of Overpayments &Enforcement of Judgment | • 330 Federal Employers' Liability | • 368 Asbestos Personal Injury Product Liability | • 640 RR & Truck | • 830 Patent | • 460 Deportation |
| • 151 Medicare Act | • 340 Marine | | • 650 Airline Regs | • 840 Trademark | • 470 Racketeer Influenced and Corrupt Organizations |
| • 152 Recovery of Defaulted Student Loans (Excl. Veterans) | • 345 Marine Product Liability | **PERSONAL PROPERTY** | • 660 Occupational Safety/Health | **SOCIAL SECURITY** | • 810 Selective Service |
| • 153 Recovery of Overpayment of Veterans Benefits | • 350 Motor Vehicle | • 370 Other Fraud | • 690 Other | • 861 HIA (1395ff) | • 850 Securities/Commodities Exchange |
| • 160 Stockholders Suits | • 355 Motor Vehicle Product Liability | • 371 Truth in Lending | **LABOR** | • 862 Black Lung (923) | • 875 Customer Challenge 12 USC |
| • 190 Other Contract | • 360 Other Personal Injury | • 380 Other Personal Property Damage | • 710 Fair Labor Standards Act | • 863 DIWC/DIWW (405(g)) | • 891 Agricultural Acts |
| • 195 Contract Product Liability | | • 385 Property Damage Product Liability | • 720 Labor/Mgmt. Relations | • 864 SSID Title XVI | • 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | • 730 Labor/Mgmt. Reporting & Disclosure Act | • 865 RSI (405(g)) | • 893 Environmental Matters |
| • 210 Land Condemnation | • 441 Voting | • 510 Motions to Vacate Sentence Habeas Corpus | • 740 Railway Labor Act | **FEDERAL TAX SUITS** | • 894 Energy Allocation Act |
| • 220 Foreclosure | • 442 Employment | • 530 General | • 790 Other Labor Litigation | • 870 Taxes (U.S. Plaintiff or Defendant) | • 895 Freedom of Information Act |
| • 230 Rent Lease & Ejectment | • 443 Housing/Accommodations | • 535 Death Penalty | • 791 Empl. Ret. Inc. Security Act | • 871 IRS - Third Party 26 USC 7609 | • 900 Appeal of Fee Determination Under Equal Access to Justice |
| • 240 Tort to Land | • 444 Welfare | • 540 Mandamus & Other | | | • 950 Constitutionality of State |
| • 245 Tort Product Liability | • 440 Other Civil Rights | • 550 Civil Rights | | | [X] 890 Other Statutory Actions |
| • 290 All Other Real Property | | • 555 Prisoner Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

[X] 1 Original Proceeding   • 2 Removal from State Court   • 3 Remanded from Appellate Court   • 4 Reinstated or Reopened   • 5 Transferred from another district (specify)   • 6 Multidistrict Litigation   • 7 Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT: | • CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 | DEMAND $ 3,681,429.80 | Check YES only if demanded in complaint: JURY DEMAND: • YES [X] NO |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY (See Instructions): | JUDGE M. James Lorenz | Docket Number 04CV2248, 04CV1147, 05CV0446 |
|---|---|---|

DATE October 25, 2005                SIGNATURE OF ATTORNEY OF RECORD    C. E. Brumfield

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

118257  $250.00

ORIGINAL