1  Charles E. Brumfield, Esq. CA SBN 56636
2  1725 Gillespie Way
   El Cajon, California 92020
3  Telephone: 619-596-8600, ext. 138
   Facsimile: 619-596-8790

4
   Attorney for PURE
5

FILED

06 OCT 25 PM 2: 59

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

PDL          DEPUTY

6              **UNITED STATES DISTRICT COURT**

7              **SOUTHERN DISTRICT OF CALIFORNIA**

8

9  PURE BIOSCIENCE, f/k/a          Case No.:  05-CV-2020-L (NLS)
   INNOVATIVE MEDICAL SERVICES

10                                 **NUNC PRO TUNC**
                                   **OCT 2 4 2006**

11         Petitioner,             **(PROPOSED)**

12  v.
                                   **ORDER APPROVING GLOBAL**
13  FALKEN INDUSTRIES, LTD., a New  **SETTLEMENT AGREEMENT**
   Jersey corporation,             **["SO ORDERED"]**

14
           Respondent.
15
                                   Hon. Nita L. Stormes, presiding re settlement
16

17       The parties hereby appear before the Court by way of their jointly presented and attached

18  "Global Settlement Agreement."  The parties request that the Court approve the agreement and

19  order compliance therewith.

20       GOOD CAUSE APPEARING, it is so ordered.

21

22

23

24

25  Dated: October____, 2006     _____
                                 JUDGE OF THE UNITED STATES DISTRICT COURT
26

27

28

**ORIGINAL**

                                           **SO ORDERED**
                                           **05 CV 2020 L (NLS)**
                                           **PAGE 1**

### GLOBAL SETTLEMENT AGREEMENT

This Global Settlement Agreement ("Agreement") is made as of October 18, 2006 by and among on the one hand:

Pure Bioscience, a California corporation fka Innovative Medical Services (hereinafter "PURE"), Michael L. Krall (hereinafter "Krall"), Dennis B. Atchley (hereinafter "Atchley"), Charles E. Brumfield (hereinafter "Brumfield"), the collective members of the Board of Directors of PURE (hereinafter "Pure Directors," represented herein by Krall), Carline America Ltd. (hereinafter "Carline") and all of the above collectively referred to as the "PURE Parties," and on the other hand:

Falken Industries Ltd., a New Jersey corporation with its offices in France and any affiliated French "Falken" entity (hereinafter "Falken"), Hellé A. Madsø (hereinafter "Madsø"), Nickel Ltd., a New Jersey corporation electing domicile for these purposes at the offices of Falken and any affiliated French "Nickel" entity (hereinafter "Nickel"), Emile E. Gouiran (hereinafter "Gouiran"), the collective members of the Board of Directors of Falken (hereinafter "Falken Directors" represented herein by Madsø), the collective members of the Board of Directors of Nickel (hereinafter referred to as "Nickel Directors" represented herein by Gouiran), Fibianca Group Inc., a New Jersey corporation (hereinafter "Fibianca"), all collectively referred to as the "Falken Parties."

Global Settlement Agreement Final                    1

## PREAMBLE

_PURE litigation / arbitration against certain Falken Parties:_

·  WHEREAS, PURE and Falken (over Falken's jurisdictional objection)·

engaged in an Arbitration in San Diego County before AAA arbitrator Jack

Fitzmaurice ("Arb 1.5"). On or about October 12, 2005, Arbitrator Fitzmaurice

entered an award in favor of PURE. Thereafter, PURE petitioned the federal

court to "confirm" the Arb 1.5 award of Fitzmaurice as a federal judgment. On or

about January 20, 2006, Judge Lorenz granted PURE's petition and entered

judgment accordingly (the "Falken Judgment"). Various Falken motions are now

pending before Judge Lorenz challenging the legal validity of the Falken

Judgment on the claimed bases _inter alia_ of lack of arbitrability, "manifest

disregard of the law," improper judgment form, and arbitrator prejudice. In the

meantime, PURE has commenced preliminary collection proceedings re the

Falken Judgment before Judge Lorenz. Falken asserts that such PURE

collection efforts are invalid and/or procedurally improper. Further, PURE has

submitted the Fitzmaurice Award for foreign enforcement against Falken in

France and has applied for freezing orders as to certain assets believed to be

owned by Falken, all of which have been stayed by a Falken appeal in France on

asserted statutory grounds.

WHEREAS, PURE has commenced an arbitration in San Diego against

Nickel more specifically entitled _Pure Bioscience f/k/a Innovative Medical_

_Services v. Nickel, Ltd.,_ ICDR Case No. 50 133 T 003 19 04, (hereinafter "Arb

1F"). NICKEL has been ordered by the federal court to engage in the arbitration,

but is appealing such order on *inter alia* "arbitrability" grounds. The underlying Arb II hearing on the merits is now set for November 28, 2006. Nickel asserts that such arbitration will be anticipatorily resolved in its favor. Furthermore, Nickel is concurrently requesting a federal court order "staying" Arb II, which request is based on a number of stated grounds;

WHEREAS, certain PURE Parties have on or about February of this year commenced a quasi-criminal complaint in France against "X", more specifically entitled "Plainte contre X pour faux, usage de faux, escroquerie ou tentative d'escroquerie et usurpation de titre", but in the narrative referencing enumerated alleged acts of misconduct regarding certain or all of the Falken Parties. The Falken Parties deny all wrongdoing in this regard and have stated that they intend to pursue all available relief;

WHEREAS, PURE has commenced an action against Falken Industries, Ltd. in the United States District Court located in San Diego, more specifically entitled Pure Bioscience v. Falken Industries, Ltd., Docket No. 05 CV 2299, seeking claims similar to those asserted against Nickel in Arb II. Falken has moved to dismiss for *inter alia* lack of the court's jurisdiction, but presently, no other action has been taken by either party in that matter.

Falken Parties litigation against PURE Parties:

WHEREAS, Nickel and Falken have filed a declaratory relief action against PURE in the federal court in San Diego more specifically entitled Falken Industries, Ltd. and Nickel, Ltd. v. Pure Bioscience, Docket No. 04 CV 2248; ;

Global Settlement Agreement Final                    3

seeking a declaration that they were not subject to arbitration in California. The

federal court has terminated the action and the matter is currently on appeal.

WHEREAS, Nickel has filed a Statement of Claims against PURE in

arbitration with the American Arbitration Association more specifically entitled

Nickel, Ltd. v. Pure Biosciences, ICDR Case No. 50 180 T 00515 05, (hereinafter

"Arb III"), seeking declaratory judgment in Stockholm, Sweden in respect to a

certain "Umbrella Agreement" signed as and between PURE and Nickel. PURE

has formally responded to the Nickel "Arb III" Statement of Claims and has raised

certain enumerated defenses.

WHEREAS, Nickel has filed a French action against PURE in the

"Tribunal de Commerce de Paris" seeking recovery of damages on the basis of

PURE's alleged violation of the Super Distribution Agreement between PURE

and Nickel. PURE has filed a responsive pleading denying any and all liability;

WHEREAS, Nickel has filed a French action against Carline America and

PURE in the "Tribunal de Commerce de Paris" seeking recovery of damages on

the basis of Carline's and PURE's alleged violation of a separable Super

Distribution Agreement between Carline and Nickel. PURE has filed a

responsive pleading denying any and all liability;

WHEREAS, Nickel, Falken and Goulran have filed a French action against

PURE, Brumfield, Atchley, Krall, Biblcoff, Business Wire, and MacInnis in the

"Tribunal de Grande Instance de Paris" seeking recovery for claimed libel. The

PURE parties deny any and all liability for such claim;

Global Settlement Agreement Final                    4

WHEREAS, Nickel has filed a French action against PURE and Ciba, in the "Tribunal de Commerce de Paris" seeking *inter alia* damages and enforcement of the alleged non-competition component of a Super Distribution Agreement. The referenced PURE Parties deny any such liability of any kind or amount whatsoever;

WHEREAS, Nickel has filed a French action against PURE and Therapeutics in the "Tribunal de Commerce de Paris" seeking *inter alia* damages and enforcement of an asserted non-competition component of a Super Distribution Agreement. The referenced PURE Parties deny any liability of any kind or in any amount;

WHEREAS, after careful consideration and meaningful consultation with and reliance upon their respective counsel, the parties concur that it is in their best interests to terminate with prejudice all of the expensive and time consuming litigation and to enter into this Agreement upon the terms hereinafter set forth;

### AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree that:

1.    All Parties hereto submit and stipulate to having the United States District Court located in the City and State of New York to be the exclusive jurisdiction for dispute resolution of all matters arising out of the within global settlement agreement (hereinafter "the Agreement"). In the unlikely event that the federal court in New York refuses to accept jurisdiction, if any of the PURE

Global Settlement Agreement Final                          5



Parties has a dispute, such claim(s) must be filed in the federal court located in San Diego and if any of the Falken Parties has a dispute, such claim(s) must be filed in the federal court located in the city of Boston, Massachusetts. None of the parties to this Agreement shall be allowed to file in another jurisdiction for any dispute arising out of the within Agreement. For the express limited purpose of this Agreement, its performance or enforcement and not otherwise, the settling Parties of French nationality specifically waive any rights under Article 14 and 15 of the French Civil Code. Should an enforcement order of the federal court become necessary regarding this Agreement, the Parties of French nationality agree that any enforcement order obtained as a result of this disposition may be promptly entered in accordance with French law, without opposition of any kind by any of the relevant parties and in accordance with the enforcement ruling of the federal court herein above stipulated. Such resulting judgment shall not be subject to appeal by any Party.

2    All of the above referenced litigation or arbitration cases including any appeals presently pending, and any pending cases that may have been inadvertently omitted by either side from the recitals hereto with the exception of the French quasi-criminal action, shall be forthwith dismissed with prejudice by the Parties plaintiff or Parties complainant as the case may be. Said dismissal documentation shall be in formats approved by the Parties, and ultimately appended to the Agreement by exhibit. The dismissals or stipulations of dismissal of all cases and arbitrations shall be filed with the respective federal courts, American Arbitration Association (or the International Dispute Resolution

Global Settlement Agreement (final)                    6







Centre) and French courts in which such actions are pending and such dismissals, acceptations of dismissals if necessary and indeed (upon full payment by the Falken Parties hereunder) the global settlement order anticipated hereby shall be deemed a final order or judgment not susceptible of appeal, reopening, modification or challenge of any kind and by any Party.

3.     This Agreement to be executed in four originals shall be first signed by the Falken Parties. The signature pages shall be faxed to Escrow Holder no later than close of business in San Diego, California on Wednesday, October 18, 2006. All pages of such Agreement shall be initialed for the limited purpose of preventing confusion and substitution inadvertent or otherwise.  The Falken Parties shall concurrently forward all four duplicate originals to Escrow Holder by way of overnight express mail. The Escrow Holder shall initial all pages of all four duplicate originals as Escrowee and for the sole and unique purpose of verifying the authenticity of each page in case of dispute, and Federal Express all four duplicate originals to PURE.  Upon notification to PURE by the Escrow Holder of timely receipt by the Escrow Holder of the Falken Parties' faxed signatures, PURE shall have one business day to fax the signatures of the PURE Parties to the Escrow Holder, and shall at its earliest convenience, forward two duplicate originals of the Agreement bearing initials and signatures by way of expressed mail to said Escrow Holder. Upon receipt of the PURE Parties signatures by the Escrow Holder, the Falken Parties shall within one business day (or as soon as practicable thereafter)  wire an initial payment to Escrow Holder's Attorney Trust Account for the account of PURE in the sum of $15,000.00. This initial payment

Global Settlement Agreement Final                    7





by the Falken Parties shall be made by wire to the Escrow Holder, who shall

within one business day (or as soon as practicable) rewire the same to PURE's

bank coordinates or Federal Express a check from the Escrow Holder's trust

account to PURE for such amount. With the timely cooperation of the Escrow

Holder, the PURE Parties shall forthwith proceed to have the Agreement "so

ordered" by the United States District Court in San Diego. In the unlikely event of

a failing of this settlement after it has been "so ordered" by reason of a failure on

the part of the Falken Parties to pay the balance of the monetary fund

($210,000.00) in accordance with the terms hereof, the Falken Parties agree that

the $15,000.00 initial payment to PURE shall be considered as liquidated

damages for the time, inconvenience and costs related to the formalization of this

Agreement.

4.    Not later than 16 calendar days after the federal Court has issued a

stipulated order implementing this Agreement ("So Ordered") and has posted the

stipulated order "so ordered" together with this Agreement as an Exhibit on

PACER, the monetary settlement amount agreed to be paid by Falken to PURE

in the full sum of $225,000.00 shall be paid by the Falken Parties to Escrow

Holder, Carlo Cellai, Esq.'s Attorney Trust Account for the benefit of PURE. The

Falken Parties, to the extent that the above-referenced $15,000.00 has

previously been paid to PURE, shall be entitled to deduct the initial $15,000.00

payment from the $225,000.00 settlement amount, leaving a balance due and

owing to PURE in the amount of $210,000.00. The Escrow Holder shall sign this

Agreement in confirmation of his agreement to perform in accordance with the

Global Settlement Agreement Final                    8

requirements for such Escrow Holder as provided for in this Agreement. The Falken Parties hereby affirmatively and knowingly represent that they are as at this date, able to fund the monetary settlement amount on such condition. The failure of the Falken Parties to pay the monetary settlement amount by the above due date shall render this entire Agreement and the "so ordered" disposition of the federal court null and void and of no further force and effect.

5.     The Escrow Holder shall receive all initialed and signed Agreement documentation, and shall additionally receive fully executed dismissal documentation of all Parties. Escrow Holder shall faithfully preserve all original and copies of the executed Agreement and executed dismissal documentation (and related Opinions of Counsel) pending the Close of Escrow. In no event shall Escrow Holder distribute any original or copied executed dismissal documents and related Opinions of Counsel to the respective Parties until Close of Escrow. However, Escrow Holder may release a duplicate original of a fully signed and initialed Agreement to Falken for the purpose of securing their third party financing, and to PURE for submission to Judge Lorenz in order to process for the "so ordered" federal court approval. The PURE Parties acknowledge that the Escrowed monies are being paid by a third party for the exclusive benefit of the Global Agreement and agree that such funds shall in no event be levied upon, subject to attachment, encumbered or otherwise seized by any party at any time and through the Close of Escrow.

6.     The Parties shall fully execute and deliver to the Escrow Holder the reciprocal requests for dismissals with prejudice and related Opinion's of Counsel

Global Settlement Agreement Final                       9

within 5 working days (or as soon as practicable thereafter) of the Agreement being executed by the parties.  Counsel for the Pure Parties and for the Falken Parties shall execute Joint Stipulations of Dismissal with prejudice for all U.S. litigations, arbitrations and for the Swedish arbitration and such executed stipulations shall be filed with the Escrow Holder.  French counsel for the Pure Parties and Falken Parties shall similarly execute such stipulations for the French actions with the exception of the French quasi-criminal action which is specifically referenced in paragraph 7 below.  The Escrow Holder shall immediately release any remainder of the full monetary consideration of $225,000.00 to PURE only at such time as the Escrow Holder, shall have satisfied himself fully that all Counsels for the parties have taken all affirmative steps necessary to allow the conclusive and effective dismissal, with prejudice, of all litigation and arbitration matters as and between the Pure and Falken Parties as intended under this Agreement in accord with the dispositions of this Agreement as set forth below.

7.   With the exception of the "quasi criminal" French action, French and US Counsels for the Pure Parties and for the Falken Parties shall exchange a formal opinion in favor of the other party confirming that all litigation agreed to be disposed of by this Agreement will be dismissed with prejudice on filing of the stipulations of dismissals with the respective courts and arbitrators, that such dismissals when entered constituted a final order or judgment not susceptible of appeal, reopening, modification or challenge of any kind and by any Party.

a.  In respect to the French "quasi-criminal" action, the opinion of PURE's counsel shall be deemed sufficient if supported by (i) a

Global Settlement Agreement Final                    10

statement that PURE has not paid any presently required, and will

not pay any further required fees ("consignation(s)") necessary

under French law to promote the French action and (ii) that PURE

has formerly withdrawn its complaint and together with Falken

counsel has appeared before the instruction magistrate to move

such dismissal ("Non lieu"), and (iii) that PURE or all or any of the

PURE Parties will not otherwise actively promote, participate in,

witness, assist, corroborate, respond or pursue the matter in any

way and at any time.

8.    Upon receipt of the fully executed Agreement which has been "so

ordered", the executed Stipulations of Dismissals for all litigation and arbitration

matters and the Opinions of Counsel that such Stipulations of Dismissal will

terminate all litigation and arbitration matters as stated in paragraph 7 above, the

Escrow Holder will then promptly proceed to forward the fully executed

Stipulations of Dismissals to the appropriate courts and arbitrators and shall

concurrently forward the balance of the $225,000.00 payment to PURE.

9.    The PURE Parties hereby release and discharge each and all of

the Falken Parties and any of their present and former officers, directors, agents,

employees, attorneys, successors and assigns from any claim, debt, damage or

liability of any nature whatsoever, whether known or unknown, in any way related

to the subjects of the underlying suits. The PURE General Release provided for

herein is not intended to and specifically does not release former Falken directors

Steven Gordon and/or Keith Duffy, except in their capacities as such, but in no

event shall any of the Falken Parties be required by this Agreement to participate in any action filed by the Pure Parties against Steven Gordon and/or Keith Duffy.

10.   The Falken Parties hereby release and discharge each and all of the PURE Parties and any of their officers, directors, agents, employees, attorneys, successors and assigns from any claim, debt, damage or liability of any nature whatsoever, whether known or unknown, in any way related to the subjects of the underlying suits.  The Falken General Release provided for herein is intended to and does specifically include and inure to the benefit of Michael L. Krall, Dennis B. Atchley, Charles E. Brumfield, Terri MacInnis, Bibbicoff and Associates, Carline America Ltd. (hereinafter "Carline"), Ciba Specialty Chemicals Corporation, a Delaware corporation; Ciba Specialty Chemicals, Inc, a Switzerland company (collectively hereinafter "Ciba") Therapeutics Inc., and Business Wire.

11.   All Parties agree to the waiver of the protection of California Civil Code § 1542 (or any similar statute), which states in applicable part as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

12.   The Falken Parties will use their best efforts, to the extent that it is possible, to remove all internet postings concerning any of the PURE Parties made under the pseudonyms, "Nickel-dispatches" and "Nickel-Info", as these have appeared in the Yahoo! and/or Raging Bull corporate bulletin boards of PURE and/or NVID.  The PURE Parties represent that they have not made any such postings concerning any of the Falken Parties in the Yahoo! and/or Raging

Global Settlement Agreement Final                     12

Bull corporate bulletin boards.  The Pure and Falken Parties will cooperate to use their best efforts to the extent that it is possible, to remove all internet postings of any party concerning any matter involving any circumstance or event or purported relationship as and between the Pure and Falken Parties as these have appeared in various press releases distributed by any service and as continue to appear in or on the internet.

13.    No Party shall directly or indirectly assist, cooperate, witness or in any way participate in any litigation, arbitration, petition or proceeding of any kind and for any purpose as against any of the other(s), unless compelled by an order of a competent judicial court or regulatory authority having *in personam* and *subject matter* jurisdiction over such party.

14.    The Parties agree that this Agreement is to be posted by the Federal Court after it has been "so ordered" by said court, on PACER.  To the extent disclosure of settlement is legally required by the U.S. Securities & Exchange Commission (hereinafter "SEC"), any French jurisdiction or similar US or foreign regulatory authorities, such disclosure shall be submitted for prior approval by the other party, but such approval shall not be unreasonably withheld.  The Parties agree that in their disclosures to such regulatory authorities that they will not indicate, directly or indirectly, that the matters contemplated by the within Agreement were settled "favorably" to one side or the other.

15.    The Parties hereto agree to refrain from making any negative public statements regarding each other to any third party, including any present or

Global Settlement Agreement Final                    3

prospective clients or customers of any Party that might be injurious to the reputation or good will of any other Party but customarily used "product comparisons", as used in the marketing and sales activity of the parties will not constitute a breach of this Agreement.

16. . The Parties further agree that any and all prior alleged agreements, understandings and obligations among the Parties constituting, arising out of or relating to the Core Settlement Agreement, the Omnibus Assignment, the Covenant to Stand Seized, the Umbrella Agreement, the Super Distributor Agreements, the so-called "French Judgment" and the Axen License Agreement are hereby annulled and terminated. The Falken Parties and Pure Parties shall so mark their duplicative originals of these contracts, and forthwith return them to PURE and Falken respectively. The Falken Parties specifically represent and acknowledge that as a result of this Agreement or otherwise, none of them has any claim whatsoever to any right, title or interest in or to PURE's intellectual property as it relates to the Axenohl Patent(s), or derivatives thereof, trademarks, technology and/or confidential information). Any and all confidential documents supplied by PURE to any of the Falken Parties regarding PURE's intellectual property shall forthwith be returned to PURE. Further, the Falken Parties acknowledge that as a result of this Agreement or otherwise, none of them has any right whatsoever against any PURE Party, arising in any way from the Core Settlement Agreement, the Umbrella Agreement, the Omnibus Assignment, the Covenant to Stand Seized, any Super Distribution Agreement related to PURE or Carline, or the Axen License Agreement, or any other agreement of judgment

Global Settlement Agreement Final                    14



whatsoever (except this Agreement). Incident thereto, the Falken Parties shall cooperate in causing the transfer of the European Axen trademark to PURE. PURE shall be responsible for preparing proper transfer documentation and paying any statutorily required transfer fees.

17. As a result of this Agreement or otherwise, the PURE Parties acknowledge that none has any right, claim or license as against "Clean Plus" or the Clean Plus product line, nor for that matter (except as stated above regarding the European Axen trademark) against any trademark, or other intellectual property owned by any of the Falken Parties. Furthermore, as a result of this Agreement or otherwise, the PURE Parties acknowledge that none has any right whatsoever against any of the Falken Parties, arising in any way from the Core Settlement Agreement, the Umbrella Agreement, the Omnibus Assignment, the Covenant to Stand Seized, any Super Distribution Agreement related to PURE or Carline, or the Axen License Agreement, or any other agreement or judgment whatsoever (except this Agreement).

18. The Parties represent and warrant that the litigation rights, rights under contracts, and intellectual property rights which are the subject matter of this Agreement have not been transferred to anyone not a Party to this Agreement, and that in the opinion of the Parties and their respective counsel, this Agreement is lawful in all respects and enforceable according to its terms.

19. With respect to the judgment confirmed in favor of PURE and against Falken rendered as a result of the Arb 1.5 and entered on or about January 20, 2006 the Parties agree to jointly request that the federal court vacate

Global Settlement Agreement Final　　　　15



the judgment on procedural grounds and the underlying arbitral sentence shall be
marked by PURE as satisfied in full.  PURE agrees to file whatever
documentation is necessary to effectuate the terms of this paragraph with the
United States District Court in San Diego, the American Arbitration Association
and to move the French court to vacate with prejudice ("désistement d'action et
d'instance") the judgment rendered in recognition of the arbitral sentence as for
which enforcement is being sought.  Pure agrees to use its best efforts to
effectuate the terms of this paragraph in a timely manner.

    20.    Nickel and Falken hereby agree to indemnify, hold harmless and
defend PURE against any claim or suit filed by Attorneys Michael Rovell and/or
Joel Seidel against PURE to enforce claimed attorney's lien(s) argued to arise
from unpaid work by said attorneys on behalf of Nickel and Falken regarding any
of the underlying litigations/arbitrations involving Nickel and Falken.  However,
such amounts incurred as a result of such indemnification shall, in no way,
exceed reasonable attorney fees of $125.00 per hour and shall be capped at a
total amount of $12,500.00 for all such costs, expenses, disbursements, and
attorney's fees incurred at all levels of the judicial process.

    21.    Communications required or permitted under this Agreement shall
be in writing, and shall be sent by traceable express delivery, personally
delivered or sent by registered or certified mail, postage prepaid, return receipt
requested.  Notices shall be given at the following addresses:

Global Settlement Agreement Final                 16





**As to the PURE Parties:**

**Pure** Bioscience Inc.
Michael Krall, President
1725 Gillespie Way
El Cajon, California 92020

**With a copy to:**

Charles Brumfield Esq.
c/o Pure Bioscience Inc.
1725 Gillespie Way
El Cajon, California 92020

**As to the FALKEN Parties:**

Falken Industries Ltd.
146 rue du Château
75014 Paris, France

**With a copy to:**

Philippe GRUNDLER
Avocat
45 rue de Rennes
75006 Paris, France

**And**

Cellai Law Offices, P.C.
ATTN: Carlo Cellai Esq.
355 Congress Street, Suite 2B
Boston, Massachusetts 02110

Any Party may change the address for delivery of notices by giving notice of such

change in accordance with this paragraph.

   22.    The Parties hereto shall each bear their respective attorneys' fees,

costs and expenses incurred in connection with the underlying transactions,

litigations and arbitrations, and in the negotiation and preparation of this

Agreement or the transactions contemplated by this Agreement.  As to Arb II, any

Global Settlement Agreement Final                    17

remaining money on deposit with the AAA (after the payment of requested AAA or arbitrator fees), shall be remitted in full to PURE.  As to Arb III, any remaining money on deposit with the AAA (after the payment of requested AAA or arbitrator fees) shall be remitted in full to Nickel.  Each Party hereto will use its best efforts to provide any and all additional information, execute and deliver any and all documents or other written material and perform any and all acts reasonably necessary to carry out the intent of this Agreement.

23.  All of the representations, warranties and covenants made as of the date of this Agreement and as of Closing, shall survive the closing of this transaction.

24.  All representations, warranties and covenants in this Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective heirs, representatives, successors and assigns whether so expressed or not.

25.  This Agreement is to be governed by and interpreted under the laws of the state of California without giving effect to the principles of conflicts of laws thereof.

26.  The section headings used in this Settlement Agreement are used only for convenience and in no way alter or control the meaning or construction of this Settlement Agreement.

27.  This Agreement may be executed in the original or by fax, in any number of counterparts and each counterpart shall constitute an original

Global Settlement Agreement Final                    18





instrument, but all such separate counterparts shall constitute but one and the same instrument.

28.    This Agreement constitutes the entire agreement between the Parties hereto and supersedes all prior agreements, understandings and arrangements, oral or written, between the Parties hereto with respect to the subject matter hereof.

29.    If any clause or provision of this Settlement Agreement is determined to be illegal, invalid or unenforceable under any present or future law, the remainder of the Settlement Agreement will not be affected thereby. It is the intention of the parties that if any such provision is held to be illegal, invalid or unenforceable that there shall be added in lieu thereof a provision as similar in terms to such provision as is possible, valid, and enforceable, and the remainder of this Settlement Agreement will be enforced according to its terms.

30.    All Parties agree that each is relying on the truth of the representations and warranties as expressed herein and would not have otherwise entered into this Agreement.

31.    This Agreement shall not be amended, supplemented, changed, or modified in any manner, orally, or otherwise, except by an instrument in writing of subsequent date signed by the Party against whom the enforcement of any modification or amendment is sought.

32.    The Parties and counsel of their choice have reviewed this Agreement; accordingly, the normal rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation

Global Settlement Agreement Final                    19



of this Agreement. In entering this Agreement, the Parties represent that they have relied upon the independent legal advice of their attorneys concerning the legal consequences of this Agreement; that the terms of this Agreement have been completely explained to them by their attorneys; and the terms of this Agreement are fully understood and voluntarily accepted.

33.     Should any dispute arise requiring any of the above referenced courts to interpret, construe and/or enforce any of the provisions of this Agreement, the prevailing party in any such dispute shall be awarded expenses, other costs and reasonable attorneys' fees.

34.     Each person signing this Agreement on behalf of an entity or individual warrants that he or she has the authority to bind said entity or individual by signing this Agreement.

35.     In executing this Agreement, no party is admitting any liability or fault of any kind.

IN WITNESS WHEREOF, each of the Parties has caused this Agreement to be executed as of the date first above written.

PURE BIOSCIENCE

in El Cajon California, this _18_ day of October, 2006
By : Michael Krall, President

Global Settlement Agreement Final                          20

**THE COLLECTIVE BOARD OF DIRECTORS OF PURE BIOSCIENCE**

_____ In El Cajon, California, this 18 day of October, 2006
By Michael Krall, Agent

_____ In El Cajon California, this 18 day of October, 2006
Michael L. Krall, an individual

_____ In El Cajon California, this 18 day of October, 2006
Dennis B. Atchley, Esq., an individual

_____ In El Cajon California, this 18 day of October, 2006
Charles E. Brumfield, Esq., an individual

**CARLINE AMERICA, LTD.**

_____ In Littleton, Colorado, this ____ day of October, 2006
By Dennis Brovarone, President

**FALKEN INDUSTRIES LTD.**

_____ In Paris France this 18 day of October, 2006
By Helle A. Madsø, President

**THE COLLECTIVE BOARD OF DIRECTORS OF FALKEN INDUSTRIES.LTD**

_____ In Paris France this 18 day of October, 2006
By Helle A. Madsø, agent

_____ In Paris France this 18 day of October, 2006
Helle A. Madsø, an individual

Global Settlement Agreement Final                     21



**THE COLLECTIVE BOARD OF DIRECTORS OF PURE BIOSCIENCE**

_____ In El Cajon, California, this ___ day of October, 2006
By Michael Krall, Agent

_____ In El Cajon California, this ___ day of October, 2006
Michael L. Krall, an individual

_____ In El Cajon California, this ___ day of October, 2006
Dennis B. Atchley, Esq., an individual

_____ In El Cajon California, this ___ day of October, 2006
Charles E. Brumfield, Esq., an individual

**CARLINE AMERICA, LTD.**

_____ In Littleton, Colorado, this /6th day of October, 2006
By Dennis Brovarone, President

**FALKEN INDUSTRIES LTD.**

_____ In Paris France this ___ day of October, 2006
By : Helle A. Madsø, President

**THE COLLECTIVE BOARD OF DIRECTORS OF FALKEN INDUSTRIES LTD**

_____ In Paris France this ___ day of October, 2006
By : Helle A. Madsø, agent

_____ In Paris France this ___ day of October, 2006
Helle A. Madsø, an individual

Global Settlement Agreement Final                    21

10/23/2006  15:14   6195968790                PURE BIOSCIENCE                    PAGE  23

_____ In Paris France this __10__ day of October, 2006
Emile E. Gouiran, an individual

NICKEL LTD.

_____ In Paris France this __10__ day of October, 2006
By : Emile E. Gouiran, Corporate Secretary
THE COLLECTIVE BOARD OF DIRECTORS OF NICKEL LTD.

_____ In Paris France this __10__ day of October, 2006
By : Emile E. Gouiran, agent

FIBIANCA GROUP INC.

_____ In Paris France this __18__ day of October, 2006
By: Dema Esther Faure, Fondée de pouvoir

ESCROW HOLDER

_____ In Boston Massachusetts, this __23rd__ day of October, 2006
Carlo Cellai Esq.

Global Settlement Agreement Final          22

1  Charles E. Brumfield, Esq.CA SBN 56636
    1725 Gillespie Way
2  El Cajon, California 92020
    Telephone: 619-596-8600 ext. 138
3  Facsimile: 619-596-8790

4

    Attorney for PURE

5

6                 **UNITED STATES DISTRICT COURT**

7

8             **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| | Case No.: 05CV2020 L (NLS) |
| PURE BIOSCIENCE fka Innovative Medical Services, a California corporation | |
| Petitioner, | **PROOF OF SERVICE** |
| vs. | |
| Falken Industries, Ltd., a New Jersey corporation | |
| Respondent. | Hon. Nita L. Stormes, presiding re settlement |

//
//
//
//
//
//
//
//

I, the undersigned, declare that: I am over the age of 18 years and not a party to the case; I am employed in the County of San Diego, California, where the mailing occurs; and my business address is 1725 Gillespie Way, El Cajon CA 92020.

On October 24th, 2006, I caused to be served the following document(s) to the referenced address:

1.   (PROPOSED) ORDER APPROVING GLOBAL SETTLEMENT

AGREEMENT ["SO ORDERED"]

**Via Fax and U.S. Mail**
Cellai Law Offices, P.C.
355 Congress Street, Suite 2B
Boston, Massachusetts 02110
617-367-2075

**Via Fax and U.S. Mail**
Joel S. Seidel, Esq.
9939 Louise Avenue
Northridge, CA 91325
818-832-7889

I declare under penalty of perjury under the laws of the State of California and those of the United States that the foregoing is true and correct. Executed on October 24th, 2006, at El Cajon, California, 92020.

Jeff Kitchell